**Leroy and Shirley YOUNG, Plaintiffs,**

v.

**1ST AMERICAN FINANCIAL SERVICES, et al., Defendants.**

**Civil Action No. 97–0165 (JR).**

United States District Court, District of Columbia.

Jan. 16, 1998.

---

Peter L. Winik, Curtis P. Lu, Vivian C. Strache, Latham & Watkins, Washington, DC, Stacy J. Canan, Legal Counsel for Elderly, Washington, DC, for Plaintiffs.

Ronald W. Fuchs, John A. Franken, Eccleston & Wolf, P.C., Washington, DC, for Stephen N. Goldberg and Edward S. Cohn.

Ronald S. Deutsch, Ronald S. Deutsch & Associates, P.A., Silver Spring, MD, for 1st American Financial Services, Inc.

David C. Tobin, Tobin, O'Connor & Ewing, Washington, DC, L. Darren Goldberg, David W. Draper, Jr., Drapper & Goldberg, P.L.L.C., Leesburg, VA, for Option One Mortg. Corp.

### MEMORANDUM

ROBERTSON, District Judge.

Plaintiffs Leroy and Shirley Young allege a Truth in Lending Act ("TILA") violation, as well as fifteen causes of action under District of Columbia law,[1] in connection with a mortgage loan made to them by defendant Option One Mortgage Company ("Option One") and brokered by defendant 1st American Financial Services ("1st American").

---

1. Three of the state law claims were dismissed in a memorandum order dated September 5, 1997.

Plaintiffs also seek to invalidate the foreclosure sale of their mortgage carried out by defendants Cohn and Goldberg.

Now before the court are motions for summary judgment filed by each of the defendants and a partial motion for summary judgment filed by plaintiffs. For the reasons set forth below, plaintiffs' motion will be denied, the motions of Option One and Cohn and Goldberg will be granted, and 1st American's motion will be granted in part and denied in part.

## BACKGROUND

In late 1993 or early 1994, plaintiffs fell behind on their mortgage payments to Crestar Bank after Mr. Young lost his job. While Crestar was preparing to foreclose on their house, plaintiffs were contacted by defendant 1st American, who arranged for the mortgage to be refinanced with a loan from Central Money Mortgage Company. Plaintiffs could not afford the payments on the new mortgage, however, and soon exercised their right to rescind that mortgage under TILA. Still facing the loss of their home, plaintiffs thereafter filed for bankruptcy, but again they were contacted by 1st American. After further negotiation, 1st American undertook to refinance plaintiff's mortgage again, this time through defendant Option One. That mortgage is the subject of the instant litigation.

The gravamen of plaintiffs' complaint is that 1st American fraudulently procured their signatures on the Option One mortgage with the false promise of yet another refinancing, on more favorable terms, if they made one year of timely payments on the Option One mortgage. Plaintiffs had owed only $40,000 on their home, but the loan brokered by 1st American was for $91,000 enough to pay off the previous loan, pay the significant closing costs, and make payments on the Option One mortgage for one year.[2]

Plaintiffs aver that they told 1st American that they could not afford the new loan and would only take it if promised the chance to refinance after a year of payments. The salesman they dealt with at 1st American's does not remember making such a promise, but neither does he deny it. Plaintiffs also aver that, without their knowledge, 1st American misstated their income on their loan application with the knowledge that they could not afford the payments on the loan for which the application was made.[3]

Plaintiffs made payments on the Option One mortgage for one year and then requested refinancing. The request was denied, as they assert 1st American intended from the start. Plaintiffs then fell behind on their payments, and Option One hired Cohn and Goldberg to foreclose on plaintiffs' home.

In early December 1996, Cohn and Goldberg sent a notice to plaintiffs by certified mail, return receipt requested, that the foreclosure sale would be held January 10, 1997.[4] Plaintiffs never signed a receipt for the certified mail. Defendants held the foreclosure sale on January 16, 1997, six days after the originally scheduled date. Option One purchased the house at the foreclosure sale for the amount outstanding on the loan, an amount approximately $40,000 less than the appraised value of the house. Option One then began the eviction process, but that has been halted by this litigation. Cohn and Goldberg have agreed not to record a deed terminating the Youngs' right to the property until this litigation has concluded.

## ANALYSIS

Plaintiffs' claims can be grouped into three categories:

(A) *TILA violations.* Plaintiffs allege that Option One overstated the Annual Percentage Rate (APR) on the mortgage and unlaw-

---

2. The 1st American brokerage fee of nearly six percent of the loan comprised more than half of the closing costs.

3. 1st American tells a different story, asserting that it was plaintiffs who falsified income verifications in order to secure the Option One Loan. Each party supports its version of the income

falsification with depositions and affidavits, thus giving rise to a genuine issue of material fact.

4. Defendants also served the Mayor of the District of Columbia with a copy of the notice of foreclosure on December 11, 1996, *see* D.C.Code § 45–715(b), and aver that they sent plaintiffs a courtesy copy of the notice by regular mail.

fully excluded certain closing costs from the calculation of the finance charge.

(B) *Fraud.* Plaintiffs seek to hold both 1st American and Option One liable for the allegedly fraudulent offer to refinance the mortgage.

(C) *Invalid foreclosure.* Plaintiffs assert that the foreclosure sale was invalid because the notice was inadequate under the applicable District of Columbia statute and that Cohn and Goldberg breached their fiduciary duties as substitute trustees under the deed of trust.

### A. The Truth in Lending Act[5]

#### 1) Overstated APR

■ Plaintiffs' first TILA allegation is that Option One *overstated* the APR applicable to their mortgage by approximately one fourth of one percent. Plaintiffs correctly assert that TILA requires the APR to be correct to within one eighth of one percent, plus or minus. As plaintiffs acknowledged at oral argument, however, a misstated APR does not entitle them to relief unless they can avail themselves of TILA's "extended right of rescission" under 15 U.S.C. § 1635(f). They cannot do so here, because 15 U.S.C. § 1649(a)(3)(C) provides that "a consumer shall have no extended rescission rights under section 1635(f) of this title with respect to . . . (3) any disclosure relating to the finance charge . . . if the amount or percentage actually disclosed . . . (C) is *greater* than the amount or percentage required to be disclosed under this subchapter." (Emphasis added).

#### 2) Finance charge disclosure

Plaintiffs' second TILA argument is that the disclosure statement prepared by Option One failed to include fees that were required to be calculated as part of the finance charge, resulting in a $540 understatement of the cost of financing.[6]

■ Plaintiffs dispute a $229 charge for services rendered by the Land Research Group ("LRG") They argue that the charge was not "bona fide and reasonable," and not excludable under the TILA implementing regulations, *see* 12 C.F.R. § 226.4(c)(7), because no defense witness could identify in deposition testimony precisely what services were performed by LRG. Opp. to Mot. for Summ. Judg. at 23. The record contains an affidavit by the president of LRG and an invoice from LRG, however, both of which show that the $229 fee was for a full title search of plaintiffs' property performed by LRG in May, 1995. *See* Option One Reply Memo., Exh. 3. The inability of two deponents to identify the charge does not create a genuine issue of material fact as to whether the work was done. Plaintiffs have not challenged the reasonableness of the $229 amount.

■ The other charges disputed by plaintiffs are a $225 attorney's fee and a $325 settlement agent fee. Under 15 U.S.C. § 1649(a)(1)(C) (incorporating the language of § 1605(a)), charges of "third party closing agents (including settlement agents, [and] attorneys . . .)" need not be included in the finance charge unless the creditor requires the imposition of the charges or services or retains the charges. Plaintiffs assert that Option One "required that a closing agent be present to complete the closing of the Youngs' loan," Opp. to Mot. for Summ. Judg. at 24, relying upon the deposition testimony of Mark Taylor, the branch manager of Option One's Northern Virginia office. But Mr. Taylor's testimony does not state or even imply that Option One required the use of a closing agent, much less any particular closing agent. His testimony is only that the broker, 1st American, chose the settlement agent. *See* Taylor dep. at 50, Exh. 17 to Declaration of Vivian C. Strache, appended to Opp. to Mot. for Summ. Judg. ("Strache Decl.") Plaintiffs also point to a set of instructions from Option One to the closing

---

5. The TILA analysis applies both to count one, which alleges a violation of TILA, and to count five, which alleges a violation of District of Columbia Code § 28–3301, premised upon a TILA violation.

6. Plaintiffs identify three charges that total $779. Apparently, Option One included $239 of charges which plaintiffs do not believe were required by TILA. The net (alleged) disparity is $540.

agent and argue that Option One gave directions about how the transaction was to be closed. The instructions add nothing to plaintiff's proof.

Plaintiffs do not address the attorney's fee charge separately, nor do they identify any distinct evidence to show that it should have been included in the finance charge.

Note that, in order to defeat plaintiffs' extended right of rescission, defendants need only show that the Disclosure Statement was accurate to within approximately $455 of the actual finance charge. *See* 15 U.S.C. § 1649(a)(3)(B) (incorporating the accuracy test of § 1605(f)(2), which in this case means that the disclosure must have been accurate to within one half of one percent of the loan principal). Plaintiffs' argument is that the Disclosure Statement was $540 less than what TILA required. Their argument for an extended right of rescission thus would fail if *any* of the three disputed charges were lawfully excluded.

Plaintiffs have failed to show the existence of a material factual dispute sufficient to defeat Option One's motion for summary judgment on counts one and five.

### 3) *Violation of the District of Columbia usury statute*

■ In count fifteen, plaintiffs allege that both Option One and 1st American violated the District of Columbia usury statute, D.C.Code § 28–3301(e)(2), by charging eight "points" for the loan (two points in favor of Option One, and six points in favor of 1st American). Summary judgment must be granted in favor of 1st American—which acted as a broker rather than a lender—because the usury statute by its terms applies only to "lender[s]." [7] D.C.Code § 28–3301(e)(2).

■ Summary judgment will also be granted in favor of Option One. The statute specifically allows a lender to charge more than the statutory maximum of one point where the additional points are paid "to a

lender for the sole purpose of qualifying for and obtaining a loan … at a lower rate of interest than would otherwise have been offered." *Id.* Option One asserts that the two points were consideration for a lower interest rate. Plaintiffs complain that there is no evidence that they were informed of the reason for this fee, nor that they agreed to it, but they have presented no evidence to dispute the Settlement Statement, which plaintiffs signed and which evidences plaintiffs' acknowledgment that this was a "loan discount" fee. *See* Option One Mot. for Summ. Judg., Exh. 21; *see also* Opp. to Mot. for Summ. Judg., p. 37.

### B. *The alleged promise to refinance*

#### 1) *Liability of 1st American for the alleged fraud*

■ Plaintiffs allege that 1st American falsely promised to refinance the Option One mortgage to induce them to enter a loan that 1st American knew they could not repay. Plaintiffs state this general claim in seven variations: violation of the District of Columbia Consumer Procedures Protection Act (count 6), fraud (count 7), constructive fraud (count 8), negligent misrepresentation (count 9), innocent misrepresentation (count 10), unconscionability (count 13), and intentional infliction of emotional distress (count 14). As discussed above, *see* note 3 *supra*, plaintiffs and 1st American have presented conflicting evidence regarding the income falsification and other elements of these counts. There exist genuine disputes of material fact, and 1st American's motion for summary judgment as to counts 6, 7, 8, 9, 10, 13 and 14 must be denied.

#### 2) *Option One's liability for the alleged fraud*

Plaintiffs also seek to hold Option One liable for 1st American's alleged fraud on the

---

**7.** Plaintiffs allege that 1st American fraudulently led them to believe that 1st American was the lender rather than the broker, and that 1st American should therefore be liable under the usury statute. While such misrepresentations, if they were made, may be relevant to the fraud counts, *see infra*, they do not change the fact that the usury statute applies only to lenders, and that 1st American was not a lender in this transaction.

theory that 1st American was acting as Option One's agent.[8]

■ Plaintiffs argue that Option One and 1st American had an ongoing business relationship, that Option One relied upon 1st American for verification of loan applications, and that the Youngs had no say in the allocation of the commission as between 1st American and Option One. Opp. to Mot. for Summ. Judg., at 15–16. Those arguments are unavailing, however, in the absence of any record evidence—or even a clear allegation—that Option One exercised *control* over 1st American. *See Henderson v. Charles E. Smith Management, Inc.,* 567 A.2d 59, 62 (D.C.1989). Option One's motion for summary judgment on counts 6, 7, 8, 9, 10, 13 and 14 must therefore be granted.

## C. The foreclosure

Plaintiffs bring three counts relating to the foreclosure: count two (violation of District of Columbia Code § 45–715(b)); count three (wrongful foreclosure); and count four (breach of fiduciary duty). Summary judgment will be granted on all of them, each for a different reason.

### 1) *Failure to give adequate notice*

■ Count two alleges that defendants failed to provide sufficient notice of the foreclosure to satisfy D.C.Code § 45–715(b). Plaintiffs argue, first, that the notice of foreclosure sent by Cohn and Goldberg violated the statute by noticing the sale for six days prior to the date it actually occurred; and second, that defendants conducted the sale knowing that plaintiffs had not received actual notice. No court has ever recognized an independent cause of action under § 45–715(b). The appropriate avenue to assert a violation of this section is a claim of wrongful foreclosure, in which a party can attack a foreclosure—once it has been completed—as contrary to law. In any event, however, neither of plaintiff's arguments has merit.

■ The D.C. notice statute does not require that the sale be held on the exact day for which the sale is noticed, but only requires that notice be sent "at least 30 days in advance of said sale." D.C.Code § 45–715(b). The Deed of Trust expressly gave the trustees the power to "postpone sale . . . by public announcement at the time and place of any previously scheduled sale." *See* Deed of Trust, ¶ 21, Exh. 2 to Cohn and Goldberg Opp. to Mot. for Summ. Judg. (signed by both plaintiffs, with each page initialed by both plaintiffs). The statute was not violated by postponing the foreclosure sale until six days after the date for which it was originally scheduled.

■ As for plaintiffs' argument that defendants should not have conducted the sale knowing that plaintiffs had not received actual notice, it is well settled that actual notice of a foreclosure sale is not required if the statutory requirements are adhered to. *See, e.g., S & G Investment, Inc. v. Home Fed.Sav. & Loan Ass'n,* 505 F.2d 370, 376 (D.C.Cir.1974). The statute was satisfied by sending the notice of foreclosure sale to plaintiffs' last known address by certified mail, return receipt requested, and delivering a copy of the notice to the Mayor at least 30 days prior to the scheduled sale.

### 2) *Wrongful foreclosure*

■ Defendants' motion for summary judgment on this count will be granted for two reasons. First, defendants did not violate § 45–715(b), so any foreclosure that occurred was not wrongful. Second, as defendants point out, a claim of wrongful foreclosure is premature at this point because defendants Cohn and Goldberg have not yet transferred title to plaintiffs' home, so there is not yet a foreclosure to set aside.

### 3) *Breach of fiduciary duty*

■ Cohn and Goldberg move for summary judgment on the ground that they cannot be liable merely for acting as fiduciaries

---

**8.** Indeed, the complaint appears to assert all claims against all defendants. However, there are no fraud allegations that relate to defendants Cohn and Goldberg, so to the extent that the complaint intends to charge Cohn and Goldberg with the alleged fraud, those counts will be dismissed.

to both the grantor and the beneficiary of a deed of trust. They argue that this dual role of the trustee under a deed of trust is sanctioned by long tradition and does not in itself create a breach of fiduciary obligations. Plaintiffs respond to that argument with specific allegations of misconduct. They allege that the trustees acted as attorneys for Option One *rather than* fiduciaries of both parties; that they proceeded with the sale knowing that the foreclosure notice violated D.C. law; that they went ahead knowing that the sale had not been adequately advertised; and that their actions with respect to plaintiffs were adversarial. The evidence upon which plaintiffs rely for those allegations fails to demonstrate the existence of a disputed issue of material fact, and defendants' motion for summary judgment must be granted.

To support the allegation that Cohn and Goldberg acted as attorneys for Option One rather than as trustees, plaintiffs offer the deposition testimony of Stephen Goldberg and Laura Hadley. Neither deponent said anything that could be reasonably construed to support plaintiffs' position: Mr. Goldberg made it clear that he was acting as a trustee rather than as a representative of Option One,[9] and Ms. Hadley merely referred to Cohn and Goldberg as the "attorney[s] who ... handle foreclosure processes for us."

The allegation that "the Trustees discovered that the foreclosure notice violated D.C. law," but nonetheless went ahead with the foreclosure sale because "Option One ... commanded the trustees to proceed ...," Opp. to Mot. for Summ. Judg., at 20, is unsupported in the record. The deposition testimony cited by plaintiffs does not show that the Trustees "discovered that the foreclosure notice violated D.C. law," but instead shows that plaintiffs' counsel contacted the trustees and *alleged* that the notice violated

the law. *See* Cohn dep. at 17–18, Exh. 22 to Strache Decl. As for the claim that Option One "commanded" the trustees to foreclose, the evidence now of record shows that the trustees asked Option One to investigate the claims of plaintiffs' attorney and then conducted the sale after being advised that the statute had been satisfied. *See id.* at 18–19; *see also* Hadley dep. at 31–33, Exh. 19 to Strache Decl. The complaint made by plaintiffs' attorney to Cohn, moreover, was that plaintiffs had not received actual notice—an allegation that Cohn and Goldberg knew did not amount to a violation of District of Columbia law. *See* Cohn dep. at 17; *see also* Part C(1), *supra.*

The allegation that the trustees allowed the sale to stand after "learn[ing] that the sale had not been adequately advertised in violation of their own policies" is also unsupported. All Mr. Goldberg "learned" was that the plaintiffs alleged inappropriate advertisement, *see* Goldberg dep. at 80–81, Exh. 16 to Strache Decl.

The allegation that the trustees "act[ed] in an adversarial manner towards the Youngs," Opp. to Mot. for Summ. Judg., at 21, lacks legal substance. The only reasonable conclusion that can be drawn from the evidence now of record is that Mr. Goldberg proceeded with the sale after examining both the law and the facts to determine that the notice was sufficient under District of Columbia law. *See, e.g.,* Letter from Stephen Goldberg to Vivian Strache, Exh. 34 to Strache Decl.

Plaintiffs have failed to demonstrate the existence of any genuinely disputed issue of material fact regarding count four.[10]

### CONCLUSION

For the foregoing reasons, an order accompanying this memorandum denies plain-

---

9. Plaintiffs emphasize that Goldberg submitted a bid on behalf of Option One at the sale. However, the evidence shows that Option One submitted a bid in anticipation of the sale, which Goldberg was to enter (and did enter) if there were no other bidders. It is hard to see how this violated Goldberg's fiduciary obligations, especially where there is no allegation that he would not have done the same thing for plaintiffs or a third party who wished to turn in a written bid prior to the sale.

10. To the extent that count 14, which alleges intentional infliction of emotional distress, is intended to apply to the foreclosure, that claim will also be dismissed. Plaintiffs have made no allegations and offered no evidence to show that the conduct of Cohn and Goldberg was outrageous enough to support this cause of action.

tiffs' motion for summary judgment, grants Option One's motion for summary judgment, grants Cohn and Goldberg's motion for summary judgment, and partially grants 1st American's motion for summary judgment.