**CAPITAL CITY CORPORATION,**
Appellant,

v.

**Edmond JOHNSON, Appellee.**

No. 92–CV–653.

District of Columbia Court of Appeals.

Argued April 27, 1993.
Decided Aug. 11, 1994.

John C. Decker, II, Falls Church, VA, for appellant.

Tilman L. Gerald, Silver Spring, MD, for appellee.

Before WAGNER, Chief Judge,* and TERRY and SULLIVAN, Associate Judges.

TERRY, Associate Judge:

This is an appeal from an order setting aside a foreclosure sale. Appellee Johnson had filed suit in the Superior Court asking that the sale be set aside as "wrongful" and seeking compensatory and punitive damages. Following a two-day non-jury trial, the court voided the foreclosure sale and ordered Johnson to become current on the mortgage payments due and owing to appellant Capital City Corporation. Appellant argues that, because of the absence of an indispensable party, an alleged bona fide purchaser, the trial court erred in failing to dismiss Johnson's suit. Additionally, appellant contends that Mr. Johnson, the husband of the recorded owner of the property, had no standing to file the complaint, and that the suit should have been dismissed for that reason as well. Alternatively, appellant asserts that, contrary to the factual findings of the trial court, the foreclosure sale was valid because proper notice of the sale was given to Mr. and Mrs. Johnson. Because the alleged bona fide purchaser of the property is at least arguably an indispensable party to this litigation, and be-

---

* Judge Wagner was an Associate Judge of the court at the time of argument. Her status changed to Chief Judge on June 14, 1994.

cause the trial court failed to give sufficient consideration to this issue, we remand the case for further proceedings.

# I

## A. *Background*

This action was brought by Edmond Johnson "for the benefit of" his wife, Theora Graves Johnson, under the authority granted to him by his wife in a power of attorney. Mr. Johnson testified that his wife agreed to lend money to Alfred Black and, in order to do so, borrowed $75,000 from appellant Capital City Corporation ("Capital City") in November 1988. Mrs. Johnson's promissory note to Capital City was secured by a deed of trust on a piece of real property which she owned on Hunt Place, Northeast.

In February 1990 Mrs. Johnson received a letter from Capital City's attorney stating that the loan was in default by $13,189.82, and warning that if that sum was not received by Thomas Nash[1] before the close of business on March 8, Capital City would "take steps necessary to foreclose on the property." A few days later the Johnsons received a notice of foreclosure, stating that a sale of the property was to take place on March 9, but Mr. Johnson testified that he and his wife "did not consider it a proper notice since it was not certified, receipt requested, as required for proper foreclosure." Since Mr. Black was supposed to make all the payments on the loan, Mr. Johnson called him about the default, and Black assured Johnson "that the note had been paid through December of 1989." Mr. Johnson then called the office of the auctioneer who was to conduct the foreclosure sale, and the person on the other end of the phone (whose name he could not remember) told him that

the sale had been "canceled." He did not ask why, and no one told him the reason for the cancellation.

The foreclosure sale eventually took place, however, on April 5, 1990, but at no point did the Johnsons receive personal notice that it had been rescheduled. On the evening of April 5, after the sale, Mr. Nash telephoned Mr. Johnson and told him that he had just purchased the property. Johnson went to Nash's office the next day to tender the overdue payment, but Nash would not accept it.

Before the date of the sale, the property had been rented by MWM Enterprises, Inc. ("MWM"), whose principal was Corbett McClure. Shortly after Mr. Nash bought the property, he resold it to MWM. In this court Capital City maintains, as it did below, that Mr. McClure is an indispensable party to this litigation.

Thomas Nash, the president of Capital City, testified that his company had sent a notice of foreclosure by certified mail to Mrs. Johnson and that in fact Mr. Johnson had signed for the letter.[2] He admitted that "[t]here was no contact [between Capital City and the Johnsons] from the time we started foreclosure back in February to the time of the sale in April." He also acknowledged that after he had bought the property,[3] he sold it to the tenant "because [of] the condition of the property. I realized I had a difficult sale, so I approached the tenant [Mr. McClure] to see if he was interested." Mr. McClure was indeed interested, but he had no money available, so Mr. Nash agreed to finance the entire purchase.[4] Concerning previous attempts to foreclose on the property, Mr. Nash testified that on two prior occasions, once in the spring of 1989 and

---

1. Mr. Nash is the president, treasurer, and sole shareholder of Capital City Corporation.

2. A return receipt for an item of certified mail, addressed to "Theora W. Graves Johnson a/k/a Theora C. Johnson" and signed by "E. Johnson" as "agent" for the addressee, was introduced into evidence. The receipt was dated February 9, 1990. In response to a question from Capital City's counsel, Mr. Nash identified it as "the receipt that was attached to the envelope which sent that foreclosure notice."

3. The property was actually bought by Brookville Limited Partnership, of which Mr. Nash was the general partner.

4. Nash testified that Mr. McClure "had some equity in his home," but that the Internal Revenue Service had a lien on the home. Consequently, Mr. Nash had to pay off the IRS lien "and also use his home to cover the down payment." According to Nash's testimony, Mr. McClure did not put up "any cash at all."

again in the fall of 1989, notices of foreclosure were sent to the Johnsons, but that the foreclosure sales were both canceled because of "serious impediments to the title."

### B. *The Trial Court's Ruling*

After hearing the evidence and the arguments of counsel, the trial court made oral findings of fact and conclusions of law. The court found that on December 15, 1988, Theora Johnson received a $75,000 loan from Capital City which was secured by a deed of trust on Mrs. Johnson's property on Hunt Place. "The starting interest was twenty-four percent, and the ending interest was thirty percent. . . ." The loan would mature on January 1, 2000, at which time the entire amount of the loan had to be repaid to the lender; in the meantime, only the monthly interest had to be paid as it fell due. There were "very large penalties for failure to pay on time," which the court described in great detail. On two occasions in 1989, Capital City sent foreclosure notices to Mrs. Johnson, but both scheduled sales were canceled, and at some later time the Johnsons came up with the overdue payments.

On February 5, 1990, following another default, Capital City notified the Johnsons of another foreclosure sale scheduled for March 9, 1990. The court expressly credited the testimony of Mr. Johnson and a representative of the auctioneer that the foreclosure sale scheduled for March 9 was canceled, not merely postponed.[5] On March 22, however, Mr. Nash called the auctioneer and gave instructions to reschedule the foreclosure sale for April 5. It was rescheduled, but no notice was given to Mr. or Mrs. Johnson. The sale took place, and Mr. Nash, acting in his capacity as general partner of Brookville Limited Partnership, purchased the property.

In its conclusions of law, the court first ruled that Mr. Johnson, having a power of attorney from his wife, was entitled to file suit on her behalf. The court then concluded that the notice requirements of D.C.Code § 45–715 (1990) were not followed:

> The fact that notice was given for a March 9th date and the fact that calendar-wise April 5th is within thirty days of March 9th does not mean that there was compliance with the statute, particularly in light of the fact that the March 9th date was canceled, as I find it was, and nobody, nobody ever told Mr. Johnson or Mrs. Johnson about the continued date, the postponement date if that's what you want to call it. And since nobody told them about the postponement date, it could not have been a postponement. It has to have been a cancellation, and the record is abundantly clear that nobody told either Mr. Johnson or Mrs. Johnson about the continuance date of April 5th, 1990.

The court said that this was not "a mere technicality" because the original notice gave the Johnsons the right to cure the default by paying the overdue amount, and had they known that the sale had been rescheduled, they could have made the payment as they had done in the past. Thus, because the statutory notice was lacking, the court ruled that the foreclosure was void and was of no legal effect. The court then ordered "the plaintiff" to pay the arrearages due and owing to Capital City and ruled that "the plaintiff" would be entitled to receive the rent from the tenant of the property, MWM, once the loan payments were made current.[6] Finally, the court explicitly stated that its rulings were not to be construed as deciding the rights of Mr. McClure and MWM:

> [T]here is not to be taken from this ruling any conclusion as to what Mr. McClure's rights are with regard to this matter. I'm not addressing the sale by Brookville to McClure. I'm just simply not addressing it. I'm finding the foreclosure of April 5th, 1990, to be bad, and that's what I'm voiding, and you all can pick up the pieces. . . .

A written order was entered a few days later embodying the court's oral ruling. The last paragraph of the order stated that "this

---

5. In addition to Mr. Johnson, the auctioneer's representative testified that the auction set for March 9 was canceled.

6. Although the court referred to "the plaintiff," who was Mr. Johnson, it is apparent from the context that the reference was actually to the owner of the property, Mrs. Johnson, in whose behalf her husband had filed suit.

order does not resolve any claims which MWM Enterprises, Inc., or Corbett Preston McClure may have against any person or entity with regard to [the property]." From that order Capital City brings this appeal.[7]

## II

### A. *Failure to Join an Indispensable Party*

■ Capital City asserts that the trial court erred in failing to dismiss the action for failure to join an indispensable party, the ultimate purchaser of the property. Super.Ct.Civ.R. 19(a) provides that a "person ... shall be joined as a party in the action if ... in the person's absence complete relief cannot be accorded among those already parties...." We have held that "[i]f a party is indispensable, the action must be dismissed unless the party is joined." *Flack v. Laster*, 417 A.2d 393, 399 (D.C.1980) (footnote omitted).

There was evidence to the effect that MWM was a bona fide purchaser of the foreclosed property, suggesting at least that MWM was an indispensable party. The trial court, however, never ruled on the need to join MWM (or Mr. McClure). The court should have undertaken the three-step analysis outlined in *Raskauskas v. Temple Realty Co.*, 589 A.2d 17 (D.C.1991):

> First, the judge should determine whether the absent person is one "whose joinder would be desireable for a just adjudication of the action" under Super.Ct.Civ.R. 19(a).... Second, the trial judge "shall order that [such a] person be made a party" if feasible.... Third, if such a person "cannot be made a party," the judge should consider "whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable."

*Id.* at 20 (citations omitted). The trial court here did not make these determinations, and we hold that it erred in failing to do so. We remand the case to enable the trial court to consider and decide, in the first instance, whether MWM is an indispensable party to this litigation, and perhaps Mr. McClure as well.[8] *See Flack v. Laster, supra*, 417 A.2d at 399–400 (defining indispensable party). If MWM is found to be a bona fide purchaser, the rights of all the parties in the property cannot be resolved unless MWM is joined as a party. The court should also scrutinize the relationship, if any, between Mr. McClure and the property, for he too may have to be joined. *See Evans v. Family Savings & Loan Ass'n*, 481 A.2d 1309 (D.C.1984) (noting, in a different context, the need to make the ultimate purchaser a party to litigation to enjoin a foreclosure).

■ We are reminded that "questions of compulsory joinder are to be resolved on the basis of practical considerations." 7 C. WRIGHT, A. MILLER & M. KANE, FEDERAL PRACTICE AND PROCEDURE § 1607, at 86 (2d ed. 1986) (hereafter WRIGHT & MILLER). One such consideration is whether joinder will help to avoid multiple suits concerning the same dispute or, as in this case, the same property. *Raskauskas, supra*, 589 A.2d at 21; *see Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 110, 88 S.Ct. 733, 738, 19 L.Ed.2d 936 (1968). In the case at bar, MWM's involvement, and possibly McClure's also, may well be essential to protect Capital City from the burden of multiple suits. Additionally, joinder would further the public interest in the "complete, consistent, and efficient settlement of controversies" and "the public stake in settling disputes by wholes, whenever possible...." *Id.* at 111, 88 S.Ct. at 739. The trial court on remand should consider these practicalities. *See generally* 7 WRIGHT & MILLER, *supra*, § 1604.

7. The complaint also named Mr. Nash and the auctioneer, Douglas K. Goldsten Auctioneers, Inc. ("Goldsten"), as defendants. As to Mr. Nash, the complaint was dismissed with prejudice. Goldsten remained in the case as a party, but it did not file a notice of appeal; Capital City is the only appellant.

8. The relationship between Mr. McClure and MWM is not entirely clear from the record. Nor can we ascertain whether Mr. McClure has or may have any interest in the property, in light of the fact that his home served in part as collateral for the purchase money loan from Brookville Limited Partnership and/or Mr. Nash.

What this litigation has resulted in thus far appears to be only half a loaf. Given the record before us, we suspect that, to produce a whole one, MWM or Mr. McClure, or both, need to be joined under Rule 19(a). Whether that need is real or illusory is the question for the trial court to decide on remand. ·

## B. *Standing*

■ Capital City asserts that Mr. Johnson does not have the legal authority to enforce any claim that his wife may have against it. This argument is entirely without merit. Super.Ct.Civ.R. 17(a) states that "[e]very action shall be prosecuted in the name of the real party in interest," and in the present case that is exactly what was done.

The caption of the complaint identifies the plaintiff as "Edmond Johnson for the benefit of Theora W. Graves Johnson." The trial court found that Mrs. Johnson executed a power of attorney authorizing her husband to act in matters concerning the property at issue in this case. That finding is not clearly erroneous and therefore must be sustained. D.C.Code § 17–305(a) (1989). Mrs. Johnson, by executing that power of attorney, created a principal-agency relationship with Mr. Johnson, giving him contractual authority to bind her in matters relating to the property. *See Bank of Montreal v. Gallo*, 3 Conn.App. 268, 272–276, 487 A.2d 1101, 1104–1105, *cert. denied*, 195 Conn. 803, 491 A.2d 1103 (1985). On this point we find no error.

## C. *The Foreclosure Sale*

D.C.Code § 45–715 requires, among other things, that written notice of a foreclosure sale be given to the owner of the property at issue at least thirty days before the sale.[9] The trial court ruled that although notice of the foreclosure sale scheduled for March 9 was given on February 5, that notice was inadequate to meet the statutory requirement for the sale which actually took place on April 5. The court based this conclusion on the fact that the Johnsons were informed, shortly before March 9, that the sale had been canceled, which meant that a new notice had to be given before the property could be sold. Since there was in fact no new notice,[10] the court held that the foreclosure sale was void for non-compliance with section 45–715. *See Independence Federal Savings Bank v. Huntley*, 573 A.2d 787 (D.C.), *cert. denied*, 498 U.S. 853, 111 S.Ct. 148, 112 L.Ed.2d 114 (1990).

Capital City argues that the Johnsons did receive proper notice because a clause in the February notice sent to Mrs. Johnson stated that the sale would be "subject to postponement for a period not exceed thirty (30) calendar days from the original date of the foreclosure sale, after which this notice of foreclosure shall expire." Capital City asserts, therefore, that the notice did not expire until thirty days after the scheduled date, *i.e.*, thirty days after March 9. Since we are remanding the case for further proceedings on the indispensable party issue, we decline to rule on the validity of the notice, for that issue may have to be relitigated if MWM (or Mr. McClure) is joined as a party.[11]

## III

We affirm the trial court's holding that Mr. Johnson had standing to bring this suit on

9. Section 45–715(b) provides, in pertinent part:

No foreclosure sale under a power of sale provision contained in any deed of trust, mortgage or other security instrument, may take place unless the holder of the note secured by such deed of trust ... gives written notice, by certified mail return receipt requested, of said sale to the owner of the real property encumbered by said deed of trust ... or his designated agent, at least 30 days in advance of the date of said sale.

10. The *court* said that "nobody, nobody ever told Mr. Johnson or Mrs. Johnson about the continued date, the postponement date if that's what you all want to call it.... [T]he record is abun-

dantly clear that nobody told either Mr. Johnson or Mrs. Johnson about the continuance date of April 5th, 1990." Although this statement appears in what the court characterized as its conclusions of law, it was actually a factual finding, and we treat it as such. *See Perkins v. District of Columbia Department of Employment Services*, 482 A.2d 401, 403 (D.C.1984) (disregarding placement of factual finding "under the heading 'conclusions' ").

11. We note, however, that Capital City's assertion assumes a fact contrary to an explicit finding by the trial court. The court found that the sale scheduled for March 9 had been "canceled," not postponed; indeed, the court repeated this finding on several occasions.

behalf of his wife. We remand the case to the trial court with directions to decide whether MWM Enterprises, Inc., or Corbett McClure, or both, should be joined as indispensable parties, and for such further proceedings thereafter as may be appropriate.

*Affirmed in part, remanded in part.*