Theora JOHNSON, Appellant,

v.

CAPITAL CITY MORTGAGE
CORPORATION,
Appellee.

Edmond Johnson, Appellant,

v.

Capital City Mortgage Corporation,
Appellee.

Nos. 95–CV–980, 95–CV–1066, 96–CV–63.

District of Columbia Court of Appeals.

Argued Nov. 20, 1998.

Decided Jan. 21, 1999.

Paris A. Artis, Hyattsville, MD, for appellants.

Eric J. Sanne, Chevy Chase, MD, for appellee.

**854**

Before STEADMAN, SCHWELB and FARRELL, Associate Judges.

STEADMAN, Associate Judge.

In 1992, appellant Edmond Johnson, acting under a power of attorney from his wife, obtained a judgment setting aside a foreclosure upon certain real property owned by his wife. On appeal, we remanded the case so that the trial court could make an explicit finding whether the third party who purchased the property after the foreclosure sale was an indispensable party; in all other respects, we affirmed. *See Capital City Corp. v. Johnson,* 646 A.2d 325 (D.C.1994).[1]

After the remand, Johnson attempted to amend or supplement the complaint to seek damages and to name additional parties. The trial judge handling the case on remand (Hon. Curtis E. von Kann) refused to permit any amendment, based apparently on the limited nature of the remand.[2] Johnson then filed, as a completely separate action, a new complaint mirroring the rejected amended complaint. The trial judge handling this new action (Hon. Richard S. Salzman) dismissed the new complaint "without prejudice to plaintiff's right to file a motion to amend the complaint in [the remanded case]." Johnson's motion for reconsideration, pointing out that such a motion had already been denied, was summarily denied.

On appeal, Johnson asserts that the two orders cannot be reconciled and that, in a Catch–22 situation, he has been denied his right to seek relief. We think he is right at least insofar as he seeks relief for acts occurring after the date of the original judgment. Accordingly we vacate the orders appealed from and remand for consideration by a single trial judge.

**I.**

The factual background prior to remand is set forth in detail in this court's opinion in *Johnson I, supra,* so only a brief summary of the facts underlying the prior appeal is required for an understanding of the issues arising out of the proceedings after remand. In April 1990, Capital City Corporation ("Capital City") foreclosed on a deed of trust on a piece of real property owned by Theora Johnson. At the time, this property was rented by MWM Enterprises, Inc. ("MWM"), whose principal was Corbett McClure. After the foreclosure sale, the property was purchased by Brookeville Limited Partnership ("Brookeville").[3] Shortly thereafter, Brookeville sold the property to McClure.

On September 4, 1990, Edmond Johnson, under the authority granted to him by his wife in a power of attorney, sued Capital City for compensatory and punitive damages for wrongful foreclosure and for declaratory relief to void the foreclosure. After a bench trial, the trial court (Hon. John H. Suda) entered an order, dated April 27, 1992, holding that the foreclosure was void for failure to comply with statutory notice requirements, but contingent on Johnson's payment of $13,189.82 in arrears due to Capital City as of April 5, 1990. Capital City appealed

1. In this prior appeal, we named Edmond Johnson as the appellee and upheld his right to proceed in the litigation under the power of attorney. The various filings in the record now before us are inconsistent in designating Theora or Edmond Johnson as the named party; for convenience, in this opinion we treat Edmond Johnson as the sole appellant.

The status of the appellee or appellees is not entirely clear. The documents in the record refer apparently interchangeably to Capital City Corporation and Capitol City Mortgage Corporation. The notices of appeal both designate the latter entity as the appellee. The opinion in the prior appeal referred consistently to Capitol City Corporation. We assume that the same entity is being referred to in all instances.

In addition to Capital City Corporation, the original complaint named Thomas K. Nash and

Douglas K. Goldsten Auctioneers, Inc. The new complaint named Brookeville Investment Group Ltd. Partnership and the two trustees under the deed of trust, in addition to Capital City Corporation. The appellee brief in this appeal is formally filed only on behalf of the latter entity, although the other two are closely linked in interest. Again, for convenience, we treat and refer to Capital City Corporation as the sole appellee.

2. All parties reached a settlement with the purchaser of the property, thus eliminating any issue of a missing indispensable party.

3. Thomas Nash purchased the property in his capacity as general partner of Brookeville. At the time he also was president and sole shareholder of Capital City.

the order, contending that the third party to whom the property was transferred after the foreclosure sale, MWM or McClure, was an indispensable party; that Edmond Johnson did not have standing to sue; and that the sale was properly noticed. *See Johnson I, supra,* 646 A.2d at 326. This court remanded the case on the issue of whether MWM or its principal, McClure, were indispensable parties to the litigation. *See id.* at 330–31.

After the remand, both parties reached settlement agreements with McClure in early 1995. In the agreement with Johnson, McClure released all right to title in the property and quitclaimed his interest in the property to Johnson. In the settlement with Capital City, McClure assigned Capital City whatever rights he had to the rent in the Landlord & Tenant Court registry.[4]

Capital City scheduled another foreclosure proceeding against the Johnson property in 1995.[5] On May 9, 1995, Johnson filed in the remanded proceeding a motion for a temporary restraining order ("TRO") and an application for preliminary injunctive relief. On May 9, 1995, Johnson also filed a motion for leave to add Brookeville and trustees James Ruppert and John Ruppert as additional parties and to file a supplemental complaint. The supplemental complaint alleged interference with property rights, slander of title, improperly collected rents from the Johnson property, and payment and satisfaction of the note held on the property; sought to enjoin Capital City's foreclosure and to obtain an accounting and money damages; and demanded a jury trial. The trial court handling the remanded case (Hon. Curtis E. von Kann) granted the TRO on May 17, 1995. On June 22, 1995, the court held a hearing both on the request for preliminary injunctive relief and to determine how the remand of *Johnson I* should proceed. The court

found that, based on the settlement agreements, McClure had no claims to title or any other claims related to this litigation and thus was not an indispensable party. Based on this finding, the court held that the 1992 order voiding the foreclosure was in full force and effect. In support of the request for preliminary injunction, Johnson raised many of the arguments included in the supplemental complaint. The court denied the motion for preliminary injunction, stating:

> I find at this point that [Johnson] has not established a probable likelihood of success on the merits ... that Capital City in some way engaged in a course of conduct which would excuse [Johnson] from the mortgage payments.

Capital City filed a request for the entry of an order finalizing the remand. Johnson did not oppose the request, and on July 6, 1995, the court entered an order finalizing the remand and denying, without discussion, Johnson's motion for leave to file a supplemental complaint.[6] Johnson then filed a motion for clarification of the order dismissing the case, arguing that the order appeared to have been made without consideration of whether the supplemental complaint and joinder of additional parties should be allowed. Johnson asked the court to make limited findings as to whether the court considered factors in support of the motion to file a supplemental complaint, so that Johnson could know whether to proceed in a separate action. In its opposition to Johnson's motion, Capital City argued that the remand had the very limited purpose of deciding McClure's indispensability, that it had been decided, and that any causes of action against Capital City that had accrued since Judge Suda's 1992 order would have to be resolved by a new suit. The court simply

---

4. On October 28, 1992, Johnson filed a civil suit against MWM alleging $89,877.91 in back rent for the period May 1990 to June 1992. On April 6, 1993, Johnson filed a suit for possession in Landlord & Tenant Court, which resulted in a protective order, by consent, calling for MWM's rental payments to be deposited into the court registry.

5. Even though Johnson paid the mortgage arrears as required by Judge Suda's order, Johnson

had made no mortgage payments for any period subsequent to April 5, 1990.

6. During the June 22, 1995 hearing, the court scheduled another hearing for July 7, 1995, on Johnson's motion to file a supplemental complaint. Such hearing apparently never was held since the court issued its order denying the motion to file a supplemental complaint on July 6, 1995.

denied Johnson's motion as moot, having already disposed of the remand in this case.

Johnson then filed a second suit, *Johnson v. Capital City Corp., et al.,* CA–6484. The claims raised in the complaint tracked those Johnson sought to raise in the denied supplemental complaint. Capital City moved to dismiss the case or for summary judgment. As already set forth above, on November, 16, 1995, the trial court (Hon. Richard S. Salzman), noting that all of the issues raised related to the prior litigation, dismissed the suit without prejudice to Johnson filing a motion to amend the complaint in the earlier suit. The court further denied Johnson's motion for reconsideration of the dismissal.

## II.

Johnson appeals the final order dismissing the first case and the order dismissing the second suit.[7] He argues that the combined effect of these rulings was to preclude any hearing on the merits of claims related to alleged wrongdoing by Capital City after the entry of the 1992 order voiding the first foreclosure.

Appellee asserts that all the issues Johnson raised in the supplemental complaint and the new suit are barred by res judicata or law of the case doctrine. Alternatively, appellee argues that all claims relate, in effect, to enforcement of Judge Suda's 1992 order nullifying the foreclosure, and that a motion to show cause or an action for civil contempt would have been the only proper way for appellant to bring these claims.

## A.

■ Under the doctrine of res judicata, "a final judgment on the merits ... precludes relitigation in a subsequent preceding of all issues arising out of the same cause of action between the same parties or their privies, whether or not the issues were raised in the first proceeding." *Carr v. Rose,* 701 A.2d 1065, 1070 (D.C.1997) (citations omit-

ted). "Such a judgment ... 'estops not only as to every ground of recovery or defense actually presented in the action, but also as to every ground which might have been presented.'" *Id.* (citing *Molovinsky v. Monterey Coop.,* 689 A.2d 531, 533 (D.C.1997)). To the extent that appellant raises any claims regarding actions of Capital City prior to entry of Judge Suda's April 1992 order, after a full trial, such claims are barred by res judicata because they could have been disposed of in the proceedings in front of Judge Suda.[8]

■ However, appellant argues that the claims raised in the supplemental complaint and new suit relate, at least in part, to actions by Capital City subsequent to the entry of the April 1992 order. Such claims would not be barred by res judicata based on Judge Suda's order, since they could not have been raised in the prior proceeding. Appellant further argues that these claims would not be barred by res judicata or collateral estoppel based on Judge von Kann's findings at the June 22, 1995, hearing on the disposition of the remand and the request for preliminary injunction. The application of res judicata requires a final judgment on the merits. *See Carr v. Rose, supra,* 701 A.2d at 1070. A "final judgment" is defined as a "'prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect.'" *Kleinbart v. United States,* 604 A.2d 861, 864 (D.C.1992) (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 13 (1982)). "A preclusive effect should not be given to 'a judgment which is considered merely tentative in the very action in which it was rendered.'" *Id.* (quoting RESTATEMENT (SECOND) OF JUDGMENTS, *supra,* § 13, at cmt. a).

It follows from the nature of a preliminary injunction proceeding that any findings on the merits of claims raised are, unless otherwise clearly indicated, merely tentative. Here, by its own words, the court's decision not to grant an injunction was

---

7. Johnson also formally appeals the denial of the request for preliminary injunction, but makes no cogent argument of error, and we do not address the matter further.

8. Appellant argues that while he sought damages in the original action, Judge Suda's order was silent on the point. Appellant did not cross-appeal the failure to award damages and is therefore bound by the result.

based on a determination "at this point that [Johnson] has not established a probable likelihood of success on the merits." It would be an impermissible stretch to conclude that Judge von Kann's findings in the context of a preliminary injunction hearing were intended to deal definitively on the merits with all the allegations appellant raised in the supplemental complaint. This same feature negates any argument that appellant is collaterally estopped by the ruling on the preliminary injunction. "In describing the rule of collateral estoppel, we have said that when an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *Carr v. Rose, supra,* 701 A.2d at 1076 (internal quotation and citation omitted).[9] Those features of finality are lacking here.

**B.**

▬▬ Alternatively, appellee argues that the law of the case doctrine prohibited appellant from filing the second suit as a collateral attack on Judge von Kann's "ruling" that Capital City had engaged in no wrongdoing after entry of the 1992 order. "The law of the case doctrine prevents relitigation of the same issue in the same case by courts of coordinate jurisdiction." *Johnson v. Fairfax Village Condominium IV Unit Owners Ass'n,* 641 A.2d 495, 503 (D.C.1994) (citations omitted). *See also Karr v. C. Dudley Brown & Assocs., Inc.,* 567 A.2d 1306, 1310 (D.C.1989) ("When, in making a final

ruling regarding a case, a judge decides an issue of law, that decision becomes the 'law of the case' and a latter court of coordinate jurisdiction will not, with some exceptions, reconsider the question." (citation omitted)). This doctrine applies a ruling of "sufficient finality" that "is not 'clearly erroneous in light of newly-presented facts or a change in substantive law.'" *Johnson v. Fairfax Village Condominium IV Unit Owners Ass'n, supra,* 641 A.2d at 503 (quoting *Kritsidimas v. Sheskin,* 411 A.2d 370, 372 (D.C.1980)). The law of the case doctrine is inapplicable here because, as discussed *supra,* Judge von Kann's findings at the preliminary injunction hearings did not constitute rulings of "sufficient finality" on the claims raised in appellant's supplemental complaint and the new case. Nor was the July 6, 1995 order dispositive of these issues as it did no more than finalize the remand, finding that McClure was not an indispensable party and that the 1992 order setting aside the foreclosure was in full force.[10]

**C.**

▬▬ Appellee further contends that, even if not otherwise barred, the only proper way for Johnson to bring claims against Capital City regarding events that occurred subsequent to the entry of the 1992 judgment was to bring an action for civil contempt for disregarding a court order, not by attempting to amend the original complaint or by filing a new action. Appellee has cited no authority that supports this contention and we know of none.[11] In any event, Judge Suda's 1992 order does not "order" Capital City to do anything; rather, the order is

9. Our conclusion that Judge von Kann's findings during the preliminary injunction hearing did not constitute final rulings on the merits disposes of appellee's argument that appellant waived any right to contest the finality of these findings.

10. Nor did Judge von Kann appear to have ruled on appellant's attempt to join Brookeville and the trustees in the supplemental complaint, insofar as res judicata or other legal principle might apply to bar such an attempt with respect to their actions prior to the 1992 judgment. Res judicata applies only to parties to a prior suit and their privies. *See District of Columbia Redevelopment Land Agency v. Dowdey,* 618 A.2d 153, 163 (D.C.1992) (citation omitted). A determination

as to whether Brookeville and the trustees are privies of Capital City could be made only after further development of the factual record.

11. The citations in appellee's brief do not support the contention that a civil contempt action is the *only* appropriate course of action in this situation; rather, they merely indicate that contempt is a sanction that a court may impose on those who fail to obey a specific order of the court. *See D.D. v. M.T.,* 550 A.2d 37, 44 (D.C. 1988); *In re Scott,* 517 A.2d 310, 312 (D.C.1986); *In re Marshall,* 467 A.2d 979, 980 (D.C.1983); *In re Kirk,* 413 A.2d 928, 930 (D.C.1980); *Manos v. Fickenscher,* 62 A.2d 791, 793 (D.C.1948).

essentially a judgment declaring rights in property.[12] Additionally, appellant argues that the claims are not based solely on actions by Capital City that relate to enforcement of the 1992 order, for example claims requiring construction of the parties' settlements with McClure, and contempt proceedings would be inapplicable to the additional parties that appellant sought to join. Under these facts, we are not persuaded that an action for civil contempt was the only proper way for appellant to proceed, if indeed it was available at all.

### III.

 The question remains whether appellant should properly be permitted to pursue his search for further relief through the procedure of an amended or supplemental complaint in the original action or through the filing of an independent action. In considering the issue of leave to amend a complaint on remand, we have stated that a decision to grant such leave is within the discretion of the trial court. *Johnson v. Fairfax Village Condominium IV Unit Owners Ass'n, supra,* 641 A.2d at 501 (citing Super.Ct.Civ.R. 15(a); *Gordon v. Raven Sys. & Research, Inc.,* 462 A.2d 10, 13 (D.C.1983)). "Although the decision is a matter of trial court discretion, the policy favoring resolution of cases on the merits creates 'a virtual presumption' that a court should grant leave where no good reason appears to the contrary." *Id.* (quoting *Bennett v. Fun & Fitness of Silver Hill, Inc.,* 434 A.2d 476, 478 (D.C.1981) (citations omitted)). The peculiarity in the case before us is that the remand could easily, as appellee argued and as the trial court apparently eventually concluded,[13] have been viewed as best confined only to the 1992 judgment. But no practical difference appears to exist between the two possible procedural steps of permitting an amended or supplemental complaint in the original action or the filing of an independent action. The issue is purely one of form, and we think the trial court would have been

within its discretion in choosing to allow either course of action. Managerial considerations of this kind are the province of the trial court. *See Carter v. Carter,* 516 A.2d 917, 922–23 (D.C.1986) (determination of whether cases should be transferred from one division to another having a closer nexus to the subject matter "turns on discretionary internal operating procedures of Superior Court administration"). What is not permissible is that, through the complexities of judicial administration in multi-judge courts, appellant was denied any forum within which to pursue his further complaints. *Cf. District of Columbia v. Gramkow,* 722 A.2d 1252, 1255 (D.C.1998) ("[W]e have reiterated that 'there is no jurisdictional limitation prohibiting one [Superior Court] division or branch from considering matters more appropriately considered in another,' so that 'dismissal of an action is proper only where none of the divisions possess a statutory basis for the assertion of jurisdiction.'" (citing *Ali Baba Co. v. WILCO, Inc.,* 482 A.2d 418, 426 (D.C. 1984))).

Accordingly, we remand both cases on appeal to the trial court for further consideration by a single trial judge and appropriate action consistent with this opinion.

*So ordered.*

---

12. The only party "ordered" to do anything was appellant (to pay up arrears owed to Capital City).

13. We do not read the trial court's denial of the motion to amend or supplement the complaint as a definitive bar to that action in any and all circumstances, a ruling that might well overstep discretionary limits.