Victor M. KIBUNJA and Shirley
O. Kibunja, Appellants

v.

ALTURAS, L.L.C., Appellee

No. 02–CV–444, 02–CV–445.

District of Columbia Court of Appeals.

Argued June 6, 2003.
Decided Aug. 19, 2004.

Julius Daugherty, Jr., with whom W. Izal Saddler, Washington, was on the brief, for appellants.

Paul A. Kaplan, Washington, for appellees.

Before TERRY, RUIZ, and REID, Associate Judges.

TERRY, Associate Judge:

These appeals challenge the validity of a foreclosure sale of a commercial real estate parcel ("the property") formerly owned by appellants Victor and Shirley Kibunja. The foreclosure sale resulted from appellants' failure to make payments on a promissory note for which the property was held as security. On appeal from a summary judgment in favor of the purchaser, Alturas, L.L.C., appellants argue (1) that the trial court abused its discretion in granting summary judgment for Alturas without allowing more time for discovery, (2) that the court erred in ruling that there was no genuine issue of material fact as to the amount of money owed under the promissory note, and (3) that the court erred in ruling that appellants were afforded adequate statutory notice of the second foreclosure sale. We affirm.

## I. FACTUAL BACKGROUND

The property, officially designated as Lot 800 in Square 2557, lies at the intersection of California Street and Florida Avenue, N.W. Because it faces both streets, it has two street addresses: 1724 California Street and 1781 Florida Avenue. On November 9, 1987, appellants borrowed money from Chrysler First Business Credit Corporation, secured by a deed of trust on the property. The promissory note was in the principal amount of $880,000, with a maturity date of November 9, 1992, and an interest rate of 13.25%, and called for monthly payments of $9,906.81. On June 15, 2000, Alturas purchased the promissory note and deed of trust. As of December 15, 2000, appellants were in default on their obligations under the promissory note, having failed for several years to make payments on the loan and to pay real estate taxes. The total amount then due under the note—principal, interest, and unpaid taxes—was said to be $2,184,809.79. Alturas ultimately paid $1.1 million to satisfy the District of Columbia's tax liens against the property.

At the time Alturas purchased the note in June 2000, Victor Kibunja was under Chapter 11 bankruptcy protection. On December 18, 2000, the Chapter 11 case was dismissed. Three days later, on December 21, Alturas filed a notice of foreclosure sale with the District of Columbia Recorder of Deeds, stating its intent to conduct a foreclosure sale on January 24, 2001, at 12:45 p.m. The foreclosure sale was also advertised for five days in *The Washington Times.* At 10:45 a.m. on the date of the scheduled sale, Victor Kibunja filed a Chapter 13 bankruptcy petition. As a result, the trustee announced at the foreclosure sale that the sale would go on, but would be subject to obtaining subsequent bankruptcy court approval.[1] Bids were conditionally taken, and Alturas was the highest bidder at $1.15 million.

Two days later, on January 26, Alturas filed in the bankruptcy court a motion to dismiss *ab initio* the Chapter 13 case and to ratify the sale retroactively. Mr. Kibunja also filed a motion for voluntary dismissal of his bankruptcy petition. The bankruptcy court denied Alturas' motion, but accepted Mr. Kibunja's voluntary dismissal and entered a handwritten order stating: "Case has been dismissed. Creditor violated the automatic stay by going forward with foreclosure after the filing of the petition and will not be granted sanctions. It further appears that the foreclosure sale was void."

Having thus failed to obtain approval of the foreclosure sale from the bankruptcy court, the trustee on February 2, 2001, advertised and gave notice of a second foreclosure sale to be held on February 15. The "Notice of New Foreclosure Sale" was sent by certified mail, return receipt requested, to all those attending the earlier sale, including Mr. and Mrs. Kibunja, and advertisements were again published in *The Washington Times.* The sale went forward on February 15, 2001—thirteen days after the second notice, and twenty-two days after the first sale—and Alturas was once again the successful bidder.

When the Kibunjas failed to relinquish possession of the property, Alturas filed suit for possession in the Landlord and Tenant (L & T) Branch of the Superior Court on June 6, 2001.[2] A money judgment was not requested. Appellants raised a plea of title in defense, asserting that the second foreclosure sale was improper. On October 17, 2001, the action was certified to the Civil Division in response to the plea of title, pursuant to L & T Rule 5(c).

On November 2, 2001, Alturas filed a motion for summary judgment, and on December 4 the Kibunjas filed an opposition. The main thrust of appellants' opposition was that they were not given adequate notice of the second foreclosure sale. Appellants also argued that "the balance owed for the subject property on the plaintiff's December 21, 2000, notice of foreclosure is at issue." However, appellants did not file with their opposition an affidavit pursuant to Civil Rule 56(f)[3] explaining how and why further discovery was needed

---

1. For an overview of the foreclosure process and the trustee's role in it, *see* Donald J. Murray, *A Practitioner's Guide to Foreclosure on a Deed of Trust in the District of Columbia,* 33 CATH. U.L. REV. 1187 (1984).

2. Because the property faces two streets and has two different addresses, two separate actions were filed. They were consolidated below, however, and have proceeded as a single consolidated action for all purposes.

3. Super. Ct. Civ. R. 56(f), which is identical to its federal counterpart, FED. R. CIV. P. 56(f), provides:

Should it appear *from the affidavits of a party opposing the motion* that the party cannot for reasons stated present by affidavit facts essential to justify the party's oppo-

in order to respond. Furthermore, at the time their opposition was filed, appellants had yet to serve interrogatories or document requests, as allowed under L & T Rule 10(c). It was not until March 1, 2002, that appellants served Alturas with interrogatories and a request for documents, and the corresponding "Certificate Regarding Discovery" was not filed with the court until March 8, 2002.

On that same day, March 8, the trial court granted summary judgment in favor of Alturas. The Kibunjas filed timely notices of appeal.[4] Months later, on July 8, 2002, appellants filed in the trial court a motion for reconsideration, arguing *inter alia* that they had not been given an adequate opportunity for discovery. They argued that they had no reasonable opportunity for discovery until the cases were transferred to the Civil Division on November 5, 2001—which was three days after Alturas filed its motion for summary judgment—since the L & T Rules provide for only limited discovery. Alturas filed an opposition, and by order dated August 31, 2002, the trial court denied the motion for reconsideration.

## II. ADEQUATE TIME FOR DISCOVERY

According to the scheduling order entered by the trial court on February 1, 2002, discovery was to be closed on April 1, 2002. The date by which dispositive motions were to be decided was May 16, 2002, but the court granted Alturas' motion for summary judgment on March 8, 2002. Appellants now argue that the court abused its discretion in rendering summary judgment before discovery was scheduled to be closed, and before the date set for dispositive motions to be decided. They assert that the trial court decided "without warning ... that the assigned Track I calendar would be rescinded, and without opportunity ... to incorporate discovery responses into [the] opposition." Specifically, appellants argue (1) that they were unable to refute the amount of debt owed under the promissory note without first gaining information from Alturas (which was the only source of information on how that figure was calculated); (2) that they anticipated "the opportunity to plug in evidence that elucidated the basis for their dispute" with that figure as information became available through discovery; and (3) that filing a Rule 56(f) affidavit with their opposition would have been premature, since dispositive motions were not to be decided until May 16, 2002. We reject each of these arguments.

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, *after adequate time for discovery* and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (emphasis added). The record here shows that appellants had adequate time for discovery to contest the amount they owed under the promissory note. The case was certified to the Civil Division on October 17, 2001, thus giving appellants the right, under L & T Rule 10(c),[5] to

---

sition, the Court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just. [Emphasis added.]

**4.** This court initially dismissed the appeals because of appellants' failure to comply with

certain appellate rules, to tender the $50 docketing fee, and to file court-ordered documents. The appeals were later reinstated on appellants' motion.

**5.** L & T Rule 10(c) provides in part: "When a case is certified to an individual calendar in the Civil Actions Branch, limited discovery is

initiate the discovery process. Even if we focus on the later date of November 2, 2001, when Alturas filed its motion for summary judgment, appellants filed their opposition on December 4, 2001, more than a month later. Assuming that discovery was even necessary for the sort of information sought by appellants, either time frame (*i.e.*, from October 17 or from November 2) gave them ample opportunity to seek the relatively uncomplicated information which they now claim they needed, namely, how the figure of $2,184,809.79 was calculated. Appellants' argument is further weakened by the fact that they made no attempt at all to obtain discovery during the period in which they now say they needed it. They did not do so until March 1, 2002, nearly nine months after the complaint was filed and nearly three months after they filed their opposition to the summary judgment motion. Moreover, appellants cannot plausibly argue that they relied on the scheduling order, since it was not entered until almost two months *after* they filed their opposition.

■ Since adequate time existed for discovery, the issue becomes whether the trial court may permissibly grant a motion for summary judgment before the date on which discovery is scheduled to close and the date by which dispositive motions are set to be decided. Alturas is correct that there is no rule or case law requiring the court to wait until the deadline for discovery before deciding a summary judgment motion. On the contrary, in *Hollins v. Federal Nat'l Mortgage Ass'n,* 760 A.2d 563 (D.C.2000), summary judgment was rendered before the completion of discovery, a circumstance which suggests that no such rule exists. *See id.* at 572. Indeed, as a matter of logic, the very existence of the ability to seek Rule 56(f) protection

(discussed *infra*) strongly indicates that there is no need for such a rule.

■ On a related point, we must also decide whether the trial court should have delayed its decision on the summary judgment motion to allow for further discovery under Rule 56(f). That rule "affords protection against the premature or improvident grant of summary judgment by permitting a nonmovant to file an affidavit stating how discovery would enable him or her to effectively oppose the summary judgment motion." *Travelers Indemnity Co. v. United Food & Commercial Workers Int'l Union,* 770 A.2d 978, 993 (D.C. 2001) (citation omitted). To invoke the protection of Rule 56(f), a party must have been diligent in pursuing discovery before the summary judgment motion was made and must specify why additional discovery is needed. *See id.* at 994. Moreover, the trial court may deny a motion for summary judgment or grant a continuance to permit discovery "if the party opposing the motion adequately explains why, at that time point, it cannot present by affidavit facts needed to defeat the motion." *Strang v. United States Arms Control & Disarmament Agency,* 275 U.S.App. D.C. 37, 39, 864 F.2d 859, 861 (1989) (quoted in *Travelers,* 770 A.2d at 994).

■ Because appellants failed to file a Rule 56(f) affidavit with their opposition, the trial court committed no error in denying them protection under Rule 56(f). *See Beegle v. Restaurant Management, Inc.,* 679 A.2d 480, 487 n. 8 (D.C.1996) ("filing of the affidavit is *required* to preserve the Rule 56(f) contention that disposition of the motion [for summary judgment] should be delayed pending discovery" (emphasis added)); *McAllister v. District of Colum-*

---

permitted as a matter of right." Further discovery beyond the limits set forth in the rule may also be granted on a written motion

"accompanied by the discovery requests to be propounded," but that requirement does not apply if the other party or parties consent.

*bia,* 653 A.2d 849, 853 (D.C.1995) (citing *Mid–South Grizzlies v. National Football League,* 720 F.2d 772, 780 n. 4 (3d Cir. 1983), *cert. denied,* 467 U.S. 1215, 104 S.Ct. 2657, 81 L.Ed.2d 364 (1984) ("Most courts which have considered the issue agree that filing an affidavit is necessary for the preservation of a Rule 56(f) contention that summary judgment should be delayed pending discovery")). *Beegle* and *McAllister* are therefore dispositive of this issue. *See also D'Ambrosio v. Colonnade Council of Unit Owners,* 717 A.2d 356, 359 n. 6 (D.C.1998) (noting that this court clarified in *Beegle* that filing a Rule 56(f) affidavit was required).

It is true that in *Travelers* we purported to adopt a more "flexible approach," focusing not only on the sufficiency of the Rule 56(f) affidavit but also on whether there were other factors present that "sufficed to alert the trial court of the need for further discovery . . . ." *Travelers,* 770 A.2d at 995–996 (citation omitted). In that case, however, a Rule 56(f) affidavit was actually filed, but was deemed insufficient on its face to invoke the protection of the rule because it stated only that "additional information to fully develop facts" was needed. *Id.* at 994. It was in this context—*i.e.,* an insufficient affidavit rather than no affidavit at all—that *Travelers* was decided.[6] Thus, while we may have followed a somewhat more flexible approach in *Travelers,* that case cannot be viewed as relaxing or eliminating the requirement that a Rule 56(f) affidavit be filed. Indeed, we "caution[ed]" in *Travelers* "that the

specific basis and explanation for the need for discovery set forth in [the opposition to the summary judgment motion] should ordinarily be set forth in the Rule 56(f) affidavit itself." *Id.* at 996.

Even if an affidavit were not required to invoke Rule 56(f) protection, appellants' argument would still fail. In the *Travelers* case, Travelers in its opposition "fleshed out its need for formal discovery" and noted that the other party had failed to respond to its discovery requests. *Id.* at 994–995. Here, by contrast, appellants' opposition in no way articulated what steps they had taken up to that point to discover the necessary information, nor did it spell out how they planned to obtain that information. They merely asserted that "the balance owed for the subject property on the plaintiff's December 21, 2000, notice of foreclosure is at issue," stating that they "reserved" several facts—one of which was that the debt owed by the defendants under the Promissory Note and Deed of Trust was $2,184,809.79—because they had not yet had an "opportunity for discovery."

In *First Chicago, supra* note 6, the court concluded that the appellant was not at fault in failing to conduct discovery on the merits. 267 U.S.App. D.C. at 33, 836 F.2d at 1381. Here, however, through the fault of no one but these appellants, discovery requests were not even made until the very day the summary judgment motion was decided. Further, the Certificate Regarding Discovery filed by appellants made no mention of what was being sought

---

**6.** In this respect the situation in *Travelers* differs from that in *First Chicago Int'l v. United Exchange Co.,* 267 U.S.App. D.C. 27, 836 F.2d 1375 (1988)—a case cited by this court in *Travelers*—in which the District of Columbia Circuit departed from those circuits that mandate the filing of a Rule 56(f) affidavit. In *First Chicago* the court held that "the combination of [appellant's] opposition to dismissal on the merits, the accompanying Statement of Material Issues [which made plain the use appellant sought to make of the information that still remained in the defendant's hands], and the outstanding discovery requests served as an adequate substitute for a Rule 56(f) affidavit." *Id.* at 32–33, 836 F.2d at 1380–1381. Even if we were inclined (and we are not) to follow the approach of the D.C. Circuit in *First Chicago,* our holdings in *Beegle* and *McAllister* would preclude us from doing so.

or why it was needed to oppose summary judgment; instead, it merely informed the court that interrogatories and a request for documents had been sent to Alturas. Thus, even under the most flexible approach possible (as in *First Chicago* ), appellants failed to take the necessary steps to invoke the protection of Rule 56(f).

## III. GENUINE ISSUE OF MATERIAL FACT

Appellants contend that the trial court erred in holding that there was no genuine issue as to the amount of money appellants owed under the promissory note. They cite two factors that would place the $2,184,809.79 figure in dispute: (1) the stated interest rate was 13.25%, but there was nothing in either the deed of trust or the note to indicate whether this interest was compounding; and (2) because, in an earlier bankruptcy proceeding, appellants were under Chapter 7 bankruptcy protection until "December 31, 1996, at the earliest" (as they state in their brief), "the interest specified in the deed of trust and note would run from the discharge dates until the time of foreclosure." Alturas responds that appellants failed to present to the trial court any factual material that would generate a dispute as to the amount owed, and argues that they should not be allowed to submit such evidence now, in the form of an "expert analysis," since it was not part of the record below. We agree with Alturas and reject appellants' argument.[7]

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Super. Ct. Civ. R. 56(c); *see Nader v. de Toledano,* 408 A.2d 31, 41 (D.C.1979), *cert. denied,* 444 U.S. 1078, 100 S.Ct. 1028, 62 L.Ed.2d 761 (1980). The moving party—in this case Alturas—has the burden of showing that no material fact is in dispute. *See, e.g., Osbourne v. Capital City Mortgage Corp.,* 667 A.2d 1321, 1324 (D.C.1995). Once that requisite showing has been made, the burden shifts to the non-moving party to present "sufficient evidence supporting the claimed factual dispute ... to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.* (citations omitted). In reviewing a ruling on a motion for summary judgment, this court applies the same standard as the trial court. That is, the judgment will be affirmed if, viewing the record in the light most favorable to the non-moving party, we conclude that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See Lee v. Luigi, Inc.,* 696 A.2d 1371, 1373 (D.C.1997).

"The party opposing a properly supported motion for summary judgment may not rest upon the mere allegations contained in its pleadings, but must set forth 'specific facts showing that there is a genuine issue for trial.'" *Potts v. District of*

---

7. At oral argument, a question arose as to how the amount of money allegedly owed under the promissory note was "material," since this case dealt solely with an action for possession and appellants never claimed, as was the situation in *Cassidy v. Owen,* 533 A.2d 253, 255 (D.C.1987), that they would have redeemed the property had a lower, more correct figure been stated. Nevertheless, we conclude that the correctness of the amount

stated in the note was a material fact, at least for the purposes of this case. It is relevant to whether the amount stated was sufficiently accurate so as to give appellants proper notice of the foreclosure sale (discussed in more detail in part IV of this opinion). *See Bank–Fund Staff Federal Credit Union v. Cuellar,* 639 A.2d 561, 569–570 (D.C.1994); *see also O'Malley v. Chevy Chase Bank, F.S.B.,* 766 A.2d 964, 974 (D.C.2001).

*Columbia,* 697 A.2d 1249, 1251 (D.C.1997) (quoting Rule 56(e)); *accord, e.g., Ferguson v. District of Columbia,* 629 A.2d 15, 19 (D.C.1993) ("The moving party's factual allegations must be countered by the non-moving party with specificity . . . and conclusory allegations are insufficient to raise a genuine issue of fact" (citations omitted)); *New Places, Inc. v. Communications Workers of America,* 619 A.2d 73, 75 (D.C.1993) (a party opposing summary judgment must "set forth by affidavit or in similar sworn fashion 'specific facts showing there is a genuine issue for trial'" (citation omitted)); *Kron v. Young & Simon, Inc.,* 265 A.2d 293, 295 (D.C.1970) (opposing party may not rely on matter asserted in argument, oral or written, to create the factual predicate for a trial).

▆▆▆▆ Appellants made it quite clear in their opposition that they disputed the amount owed. To support their argument that a dispute existed, they cited the following language from the note: "Interest shall be computed on the entire outstanding principal balance on the basis of a 365 day year for the actual number of days elapsed." Relying on this language, appellants asserted that there were "questions about the method Alturas LLC used to calculate the amount claimed due in the 2000 Notice of Foreclosure," and pointed out that there was "considerable difference between compounding daily versus annually (or not compounding at all, a viable method given the Note's paragraph 2 language)."

▆▆▆▆ Although appellants offered possible *theories* as to how Alturas could have inaccurately calculated the amount due under the note, they presented no actual *evidence* that inaccurate methods were in fact used. Instead of offering specific facts through an affidavit or in a "similar sworn fashion," *see* Rule 56(e), they merely rested upon allegations in the pleadings. It is of course true that extrinsic evidence is not necessary when the records of the moving party are inherently inconsistent. *See Osbourne,* 667 A.2d at 1325–1326 (because of questions raised within its own records, the mortgagee failed to meet its burden of demonstrating the absence of a factual dispute); *see also Lewis v. Jordan Investments, Inc.,* 725 A.2d 495, 499 (D.C. 1999). But that is not the case here, since Alturas' calculations do not reflect any inconsistencies or conflict with anything else in its pleadings. Rather, the amount stated by Alturas merely reflects its chosen method of calculation, the validity of which appellants offered no evidence to refute.

▆▆▆▆ Appellants did eventually present an affidavit from an expert to demonstrate that Alturas' calculation was inaccurate (because it failed to take into account appellant's bankruptcy protection in 1996 and 1997), but it did so for the first time in a "motion for reconsideration" filed four months after summary judgment was granted.[8] Because appellants could not meet any of the justifications under Rule 60(b) for their failure to offer this information along with its opposition, the trial court was not in a position to consider it. Thus, even if we were to assume for the sake of argument that this affidavit might have been sufficient to defeat Alturas' summary judgment motion if timely filed, appellants filed the affidavit too late for it to be of any use to them on appeal, since we may only consider facts that were before the trial court at the time it ruled. *See Reichman v. Franklin Simon Corp.,* 392 A.2d 9, 14 (D.C.1978); *Kron,* 265 A.2d at 295.

---

**8.** "A motion for reconsideration, by that designation, is unknown to the Superior Court's Civil Rules. The term has been used loosely to describe two different kinds of post-judgment motions . . . brought pursuant to Super. Ct. Civ. R. 59(e) [or] Super. Ct. Civ. R. 60(b)." *Fleming v. District of Columbia,* 633 A.2d 846, 848 (D.C.1993).

## IV. NOTICE OF FORECLOSURE

With respect to whether appellants received adequate notice of the second foreclosure sale, the trial court ruled as follows:

[Alturas] ... appears to have pursued a reasonable course of action when confronted with defendant's last-minute and ultimately unavailing application for bankruptcy protection under Chapter 13. [Alturas] understandably determined that defendant's filing was wrongly intended to obstruct the foreclosure sale....

By announcing the contingent nature of the sale at the proceedings on January 24, 2001, by then supplying public notice of the rescheduled sale on February 15, 2001, in five editions of a local newspaper of general circulation ... and by mailing, on February 2, a notice of the date of the continued sale to all recipients of the notice of the original sale, [Alturas] undertook to ensure that defendants were provided with adequate advance notice of the continued foreclosure date so as to satisfy the process requirement of notice and opportunity to be heard.

Appellants continue to argue that the foreclosure was wrongful and contend on appeal that the trial court erred in concluding otherwise. They maintain that the first foreclosure sale was voided and canceled by the bankruptcy court, rather than merely "rescheduled" or "continued," as the trial court ruled. Accordingly, notice of the second sale—which appellants assert was "a new and distinct foreclosure sale"—was defective because they were given only thirteen days' notice of it. We reject this argument.

In reviewing the propriety of a summary judgment, this court must determine whether the substantive law was correctly applied. *Burch v. Amsterdam Corp.*, 366 A.2d 1079, 1083 (D.C.1976). Here the applicable law is D.C.Code § 45–715(b) (1996),[9] which requires that written notice of a foreclosure sale be given to the owner of the property which is the subject of the foreclosure "at least" thirty days before the sale. *See Capital City Corp. v. Johnson*, 646 A.2d 325, 330 (D.C.1994). "[T]he notice provisions of such foreclosure statutes must be complied with strictly." *Johnson v. Fairfax Village Condominium IV Unit Owners Ass'n*, 641 A.2d 495, 504 (D.C.1994). But the statute on its face does not invalidate a sale that takes place more than thirty days after the date of the notice, which appears to leave room for a postponement (at least one of reasonable length) beyond the originally scheduled date, provided other requirements (*e.g.*, publication) are met.[10] Here, of course,

9. Recodified as D.C.Code § 42–815(b) (2001). This statute, unchanged since 1968, states in relevant part:

No foreclosure sale under a power of sale provision contained in any deed of trust, mortgage or other security instrument, may take place unless the holder of the note secured by such deed of trust, mortgage, or security instrument, or its agent, gives written notice, by certified mail return receipt requested, of said sale to the owner of the real property encumbered by said deed of trust, mortgage or security instrument at his last known address, with a copy of said notice being sent to the Mayor of the District of Columbia, or his designated agent, at least 30 days in advance of the date of said sale. Said notice shall be in such format and contain such information as the Council of the District of Columbia shall by regulation prescribe. The 30–day period shall commence to run on the date of receipt of such notice by the Mayor.

*See also* 9 DCMR § 3100.1 (1998).

10. Thus in *Young v. First American Financial Services*, 992 F.Supp. 440, 445 (D.D.C.1998), the court rejected a claim of wrongful foreclosure when the sale had been postponed and held six days after the noticed date.

the trustee was aware of the bankruptcy filing, but went ahead with the auction anyway after announcing that the sale would be contingent upon later ratification by the bankruptcy court (which was not forthcoming).[11] Consequently, the issue we must decide is whether the notice given to appellants for the first foreclosure sale carried over for purposes of the second sale,[12] or whether a new notice had to be provided once the bankruptcy court declared the first sale void. Stated another way, we must determine whether holding the first sale on a contingent basis was more akin to a postponement, which apparently would not affect the validity of the second sale, or a cancellation, which we assume would render it invalid.[13]

The statute is silent on this issue, and it appears to be one of first impression for this court. We have held, however, that "[a] key purpose of § 45–715(b) is to insure, whenever possible, that the owner of the encumbered property has notice of the sale 'at least 30 days in advance of the date of said sale.'" *Independence Federal Savings Bank v. Huntley*, 573 A.2d 787, 788 (D.C.1990); *see also Bank–Fund Staff Federal Credit Union, supra* note 7, 639 A.2d at 572 (the District's foreclosure notice procedures "were enacted for two primary reasons": (1) to give a property owner sufficient time to take legal action to protect himself from any improper action by the creditor, and (2) to give the District an opportunity to investigate and inform the property owner of any "abuses" of the foreclosure process).

That key purpose has been met here. While the sale was not postponed in the usual sense of the word[14] since it was held on a contingent basis, the effect of the trustee's having gone ahead with the first foreclosure sale after announcing that the results of the sale would be contingent upon bankruptcy court approval was essentially the same as if there had been a postponement. That is to say, any reason-

---

11. The bankruptcy court said in its order that the first foreclosure sale "appears" to have been void. Although the trial court in the case at bar characterized this statement as dictum, we think it is clear that the sale was indeed void. As this court has held, "[w]ith limited exceptions, the filing of a bankruptcy petition operates as an immediate and automatic stay" which, among other things, bars efforts to recover a pre-existing debt. *Peare v. Jackson*, 777 A.2d 822, 824 (D.C.2001). "[A]n action that contravenes the automatic stay 'shall be voided absent limited equitable circumstances' that simply are not present here." *Id.* at 825 (citation omitted); *see also Jones v. Cain*, 804 A.2d 322, 325 (D.C.2002).

12. The notice provided by Alturas also informed appellants, in capital letters, that "SALE DATE IS SUBJECT TO POSTPONEMENT FOR A PERIOD NOT TO EXCEED THIRTY (30) CALENDAR DAYS FROM THE ORIGINAL DATE OF FORECLOSURE SALE, AFTER WHICH THIS NOTICE OF FORECLOSURE SALE SHALL EXPIRE." Thus there can be no dispute that if the first foreclosure sale was postponed (from January 24 to February 15) rather than canceled, the second foreclosure sale was consistent with the terms of the notice.

13. Implicit in this discussion, of course, is the question of whether a canceled sale would actually require a new notice—that is, whether this court would draw a distinction between canceled sales and postponed sales. In *Capital City Corp. v. Johnson, supra*, the trial court ruled that a new notice had to be given because the foreclosure sale was canceled. We remanded the case, however, for further proceedings on a different issue, and thus we did not rule, or even comment, on the correctness of the trial court's ruling. *See* 646 A.2d at 330. We need not decide the point here, either. There is no reason in this case for us to determine whether a new notice would be required after a cancellation because, for reasons we shall explain, the first sale should not be viewed as having been canceled.

14. "Postpone" is defined as "to hold back to a later date." WEBSTER'S NEW INTERNATIONAL DICTIONARY 1773 (3d ed.1976).

able person would have interpreted the trustee's announcement to mean that a second sale was sure to follow if the first sale were not approved or ratified by the bankruptcy court. In this respect, holding the first sale on a contingent basis was unlike canceling a sale, which would permit a debtor reasonably to conclude, absent any indication otherwise, that the creditor had abandoned the foreclosure altogether, as was the trial court's concern in *Capital City. See* 646 A.2d at 328. Accordingly, we hold that the original notice carried over to the second sale, and that the second foreclosure sale was therefore held in compliance with the notice statute.

## V. CONCLUSION

For the foregoing reasons, the judgment in favor of Alturas is

*Affirmed.*