BALL, BALL AND BROSAMER,
INC., Plaintiff,

v.

Lynn MARTIN, Secretary of Labor,
et al., Defendants.

Civ. A. No. 91–3266 (CRR).

United States District Court,
District of Columbia.

Aug. 18, 1992.

G. Henry Seaks, Duncan, Weinberg, Miller & Pembroke, P.C., Denver, Colo., Frederick L. Miller, Duncan, Weinberg, Miller & Pembroke, P.C., Washington, D.C., for plaintiff.

Jay B. Stephens, U.S. Atty. for District of Columbia, John D. Bates, and Charles F. Flynn, Asst. U.S. Attys. District of Columbia, for defendants.

William A. Isokait, Associated General Contractors of America, Inc., Washington, D.C., for amicus curiae Associated General Contractors of America, Inc.

Terry R. Yellig and Martin J. Crane, Sherman, Dunn, Cohen, Leifer & Yellig, Washington, D.C., for amicus curiae Building and Construction Trades Dept., AFL–CIO.

OPINION

CHARLES R. RICHEY, District Judge.

Before the Court are the parties' cross-motions for summary judgment in the above-captioned case. In addition, the Court has received supplemental briefs from two groups serving as *amicus curiae*, namely the Associated General Contractors of America, Inc., in support of the plaintiff, and the Building and Construction Trades Department, AFL–CIO in support of the defendants.

The plaintiff Ball, Ball and Brosamer, Inc. ("Ball"), a prime contractor on a federally-funded construction project, seeks judicial review of a decision by the Department of Labor Wage Appeals Board ("the Board"), pursuant to the Administrative Procedure Act, ("APA"), 5 U.S.C. § 551 *et seq.* The plaintiff contests the Board's decision requiring it to pay a subcontractor prevailing wages in accordance with the Davis–Bacon Act, 40 U.S.C. § 276a, *et seq.* Upon careful consideration of the submissions of the parties and *amicus curiae*, the applicable law, and the entire record herein, the Court concludes that the decision of the Board must be affirmed.

I. *Background*

On September 20, 1985, the United States Department of the Interior awarded a contract to the plaintiff to construct thirteen miles of an aqueduct in central Arizona. Administrative Record ("AR") at 155. The contract explicitly incorporated by reference "[a]ll rulings and interpretations of the Davis–Bacon and Related Acts contained in 29 CFR Parts 1, 3, and 5". Pl. Opp. to Def. Mot. for Summary Judgment ("Pl.Opp."), App. A, Contract ¶ I.7.9.

The plaintiff obtained concrete and other materials required for the contract from Red Rock Products, Inc. ("Red Rock"). Amended Compl. ¶ 5; Answer to Amended Compl. ("Ans.") ¶ 5. Red Rock obtained raw materials from a sand and gravel pit, and processed the materials at a portable batch plant. Both the gravel pit and the batch plant were from two to fifteen miles[1] from the thirteen mile stretch of aqueduct under construction.[2] AR 175,

---

1. That is, the gravel pit and batch plant were two miles from the starting point of the construction site, and were corresponding distances away as construction of the aqueduct progressed along thirteen miles.

2. The plaintiff suggests in its brief that the distance from the gravel pit and batch plant is "not clear in the record". Pl.Mot. for Summary Judgment at 4, n. 1. However, the undisputed facts in the administrative record state that the distance was between two and fifteen miles, as set forth in the main text above. The plaintiff had the opportunity to contest these facts at the administrative level by seeking the appropriate hearing, and failed to do so. *See* 29 C.F.R. § 5.11(c) (complainant's remedy if material facts are disputed is a hearing before an administrative judge rather than review by the Wage Appeals Board). Accordingly, the Court shall deem admitted the fact that the distance of the

208, 263. Red Rock began removing materials from the gravel pit in January 1986. AR 195. Red Rock went out of business in March 1986. Of Red Rock's total production, 96% went either to the plaintiff, for construction of its portion of the aqueduct, or to another government contractor, Bechtel Constructors Corporation, for construction of its portion of the aqueduct. AR 162.

In March 1986, the Wage and Hour Division of the Department of Labor's Employment Standards Administration began an investigation into whether Red Rock was subject to the Davis–Bacon Act and the Contract Work Hours and Safety Standards Act ("CWHSSA"), 40 U.S.C. § 327 *et seq.*.[3] The Wage and Hour Division demanded payroll records from Red Rock, which were not obtained until July 1988. AR 161.

The Wage and Hour Division determined that Red Rock's contract with the plaintiff was subject to the Davis–Bacon Act and the CWHSSA, and that Red Rock should have paid its employees the wage rates determined by the Department of Labor to apply to those employees. AR 262–64. Specifically, the Wage and Hour Division determined that Red Rock owed a total of $60,976.71 in back wages.[4] AR 163. Therefore, in accordance with 40 U.S.C. § 276a, the Department of the Interior withheld $60,976.71 from the money due the plaintiff under the contract. AR 215. These funds are still being withheld.

By its September 16, 1988 letter to the Wage and Hour Division, Ball denied liability for back wages to former Red Rock employees, and asked for a review of the matter pursuant to 29 C.F.R. § 5.11. AR 81–82. The Acting Administrator of the Wage and Hour Division, by letters to Ball and Red Rock dated February 6, 1990, found that Ball was liable for the back

wages. AR 87–88; 262–64. By letter dated March 8, 1990, the plaintiff filed a petition for review of the ruling by the Wage Appeals Board. By doing so, plaintiff effectively accepted the Acting Administrator's determination of the facts, because the plaintiff was informed that if it disputed facts, its remedy was to seek a hearing pursuant to 29 C.F.R. § 5.11(c)(2)(i) rather than seeking review with the Wage Appeals Board. AR 87–88, 264; *see also supra,* n. 1. The plaintiff did not attempt to dispute any facts during the administrative process.

On November 29, 1990, the Board issued its decision denying plaintiff's petition for review. AR 342–365. Plaintiff then filed this action.

## II.  *Analysis*

### A.  The Standard of Review

Summary judgment is awarded when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). Where there is a properly supported motion for summary judgment, the adverse party may not rest upon the "mere allegations or denials" of its pleadings, but must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *see Lujan v. National Wildlife Federation,* 497 U.S. 871, ——, 110 S.Ct. 3177, 3188–89, 111 L.Ed.2d 695 (1990). However, it is well established that the Court must believe the non-movant's evidence and draw all justifiable inferences in its favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

Judicial review of the Wage Appeals Board decision is limited; this Court may only reverse the decision if it finds that the agency action was "arbitrary, capricious, an abuse of discretion, or otherwise not in

---

batch plant and gravel pit to the site was from two to fifteen miles.

3. No issues have been presented to this Court regarding whether funds were properly withheld under CWHSSA. Accordingly, the Court shall presume that the defendants complied with CWHSSA.

4. The back wages consisted of $57,782.44 to twenty-three employees for Davis–Bacon violations, and $3,194.27 to seventeen employees for the overtime pay violations under the CWHSSA. AR 163.

accordance with law." 5 U.S.C. § 706(2)(A).

The standards for judicial review under this statute are set forth in *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). The Supreme Court held that when a court reviews an agency's construction of a statute it administers, it is confronted with two questions. First is whether Congress has directly spoken to the precise question at issue. In determining the plain meaning of the statute, the court must look to the particular statutory language, and the language and design of the statute as a whole. *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291, 108 S.Ct. 1811, 1817, 100 L.Ed.2d 313 (1988). If Congressional intent is clear, "the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress". *Chevron*, 467 U.S. at 842–3, 104 S.Ct. at 2781.

On the other hand, if "the court finds that the statute is silent or ambiguous with respect to the specific issue, the court does not simply impose its own construction on the statute ... Rather ... the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843, 104 S.Ct. at 2782 (footnotes omitted).

B. The Plaintiff Was Obligated Under the Terms of Its Contract to Comply With the Davis–Bacon Act and Its Implementing Regulations

The plaintiff's contract explicitly incorporated by reference "[a]ll rulings and interpretations of the Davis–Bacon and Related Acts contained in 29 CFR Parts 1, 3, and 5". Pl. Opp., App. A, Contract ¶ I.7.9. The Davis–Bacon Act provides in relevant part that:

The advertised specifications for every contract in excess of $2,000 to which the United States or the District of Columbia is a party, for construction, alteration, and/or repair, including painting and decorating, of public buildings or public works of the United States or the District of Columbia ... which requires or involves the employment of mechanics and/or laborers shall contain a provision stating the minimum wages to be paid various classes of laborers and mechanics which shall be based upon the wages that will be determined by the Secretary of Labor to be prevailing for the corresponding classes of laborers and mechanics employed on projects of a character similar to the contract work in the city, town, village, or other civil subdivision of the State in which the work is to be performed ...; and every contract based upon these specifications shall contain a stipulation that *the contractor or his subcontractor shall pay all mechanics and laborers employed directly upon the site of the work* [the prevailing wages].

40 U.S.C. § 276a(a).

The statute does not explain which workers are employed "directly upon the site of the work". However, the implementing regulations define the phrase "site of the work" as follows:

(1) The *site of the work* is limited to the physical place or places where the construction called for in the contract will remain when work on it has been completed and, as discussed in paragraph (1)(2) of this section, other adjacent or nearby property used by the contractor or subcontractor in such construction which can reasonably be said to be included in the *site*.

(2) Except as provided in paragraph (1)(3) of this section, fabrication plants, mobile factories, batch plants, borrow pits, job headquarters, tool yards, etc. are part of the *site of the work* provided they are dedicated exclusively, or nearly so, to performance of the contract or project, and are so located in proximity to the actual construction location that it would be reasonable to include them.

(3) Not included in the *site of the work* are permanent home offices, branch plant establishments, fabrication plants, and tool yards of a contractor or subcontractor whose location and continuance in operation are determined wholly without regard to a particular Federal or federal-

ly assisted contract or project. In addition, fabrication plants, batch plants, borrow pits, job headquarters, tool yards, etc., of a commercial supplier or materialman which are established by a supplier of materials for the project before opening of bids and not on the project site, are not included in the *site of the work.* Such permanent, previously established facilities are not a part of the *site of the work,* even where the operations for a period of time may be dedicated exclusively, or nearly so, to the performance of a contract.

29 C.F.R. § 5.2(*l*) (emphasis in original).

The Wage Appeals Board, in its November 29, 1990 decision, found that Red Rock's workers were "employed directly on the site of the work" as that term is defined in the above-cited regulations. The Board found that the Red Rock facilities met the functional test set forth in 29 C.F.R. § 5.2(*l*)(2) of being "dedicated exclusively, or nearly so, to performance of the contract or project". In making this determination, the Board noted that Red Rock did not begin removing material from the pit until receiving the contracts from Ball and Bechtel, and that 96% of the concrete it produced was used on the aqueduct contracts. The board also determined that the Red Rock facilities met the geographical test set forth in 29 C.F.R. § 5.2(*l*)(2) of being in such proximity to the actual construction location that it was reasonable to include them in the definition of site of the work. AR 353–354. The Board noted that the facilities were located between two and fifteen miles of the construction site, and that given the nature of the physical layout of the project, this location was so near to the site that it was reasonable to include them in the site of the work. AR 354–55.

In its pleadings, the plaintiff does not challenge the Board's conclusion that under the applicable regulations, Red Rock employees were employed "directly upon the site of the work" for purposes of the application of the Davis–Bacon Act. Instead, the plaintiff challenges here the validity of the relied-upon regulation defining the "site of the work", 29 C.F.R. § 5.2(*l*)(2), contending that this regulation conflicts with the statute.

The basis for plaintiff's challenge to the regulation is a recent decision from the Court of Appeals in *Building and Construction Trades Dep't, AFL–CIO v. U.S. Dep't of Labor Wage Appeals Board,* 932 F.2d 985 (D.C.Cir.1991) ("*Midway*" [5] decision). In *Midway,* the Court of Appeals held, in a different context, that the language of the statute requiring payment of prevailing wages to workers employed "directly upon the site of the work," 40 U.S.C. § 276a, "unambiguously restricts the coverage of the Act to the geographical confines of the federal project's jobsite". *Midway,* 932 F.2d at 986. The plaintiff contends that the holding in the *Midway* decision necessarily requires that this Court find that the regulation defining "site of the work" at 29 C.F.R. § 5.2(*l*)(2), insofar as it provides a functional as well as a geographical definition of that phrase, is inconsistent with the statute and must be overturned pursuant to the APA.

As will be discussed more fully below, the Court is not convinced that the *Midway* decision or any other authority mandates the conclusion urged by the plaintiff. However, the Court need not even reach the merits of this argument, because the plaintiff is bound by the contract it entered with the government to comply with the regulation.

As previously noted, the plaintiff's contract explicitly incorporated by reference "[a]ll rulings and interpretations of the Davis–Bacon and Related Acts contained in 29 CFR Parts 1, 3, and 5." Pl.Opp., App. A, Contract ¶ I.7.9. Thus, Ball agreed to comply with and accept the regulations which were incorporated by reference into its contract. These incorporated regulations include the definition for "site of the work" which is found in Part 5 of the regulations, at 29 C.F.R. § 5.2(*l*). As de-

---

**5.** The case is known as "Midway" because it involved a challenge by Midway Excavators, Inc., *et al.,* to a regulation.

scribed above, the Board relied upon the definition set forth in this regulation in deciding that Red Rock employees were entitled to receive prevailing wages. The plaintiff cannot now attack that regulation as invalid.

A similar issue was presented to the Ninth Circuit in *Woodside Village v. Secretary of U.S. Dep't of Labor*, 611 F.2d 312 (9th Cir.1980). There, the court rejected a claim that a Presidential proclamation suspending the Davis–Bacon Act relieved the plaintiff from its contractual agreement to pay Davis–Bacon Act wages. The court noted that

> [n]othing in the Davis–Bacon Act precludes the parties from contracting with reference to it, even if by proper interpretation its requirements may not have been applicable by force of law to the project in question.

*Woodside Village*, 611 F.2d at 315; *see also Arbor Hill Rehabilitation Project*, Wage Appeals Board Case No. 87–04 at 26 (November 3, 1987) (Bramow, Chairperson, concurring) (noting that question of coverage under Davis–Bacon Act is moot where petitioners contractually agreed to apply Davis–Bacon labor standards; petitioners could not circumvent contractual obligations).[6]

These cases reflect the general principle that a contract is construed to contain the law existing at the time it is made. Courts may not construe an agreement to be modified by subsequent changes in the law unless there is a clear expression in the contract that this is the intention of the parties. 17A Am.Jur.2d, Contracts § 382 (1991) at 406–07.[7] *Cf. Lockheed Aircraft Corp. v. United States*, 192 Ct.Cl. 36, 426 F.2d 322, 327–28 (1970) (generally, regulations are applied prospectively and do not modify substantive rights in a government contract already consummated). Similarly, in the instant case, the decision by the Court of Appeals, issued several years after the contract was executed, even if it calls into question the validity of the regulation, does not relieve the plaintiff of its pre-existing contractual obligation to comply with the regulation. Thus the plaintiff cannot invoke a subsequent change in the law as a reason to be relieved of its contractual obligations.

The plaintiff and *amicus curiae* Associated General Contractors of America, Inc. ("Associated") argue that to hold plaintiff to the terms of its contract incorporating the implementing regulations would be to create unappealable obligations for contractors to "pay anyone associated with the federal construction prevailing wages, regardless of whether their employment meets the criteria of the Act." Associated Brief at 12. This contention overstates the reach of the Court's holding. By agreeing to comply with the Davis–Bacon Act and its implementing regulations, the plaintiff did not sacrifice its right to contest the applica-

---

**6.** Associated, as *amicus curiae* in support of plaintiff, relies in part on *Aleutian Constructors, Inc. v. United States*, No. C91–11470WD (W.D.Wa., June 29, 1992) (transcript ("Tr.") of motions hearing) to dispute the argument that the plaintiff is prevented from challenging the regulations incorporated into its contract. The *Aleutian* case is distinguishable from the present case and is not controlling here. In *Aleutian*, the Wage Appeals Board decided that the Davis–Bacon Act did not apply to culinary employees who were not employed on the site of the work. However, the Board determined that the contractor was obligated pay Davis–Bacon wages to the employees because it had contractually agreed to do so. The district court reversed, holding that once the Board determined that the Davis–Bacon Act did not apply, the Board lacked jurisdiction to reach the contractual issue. Tr. at 3. Moreover, the district court found that the contract did not, by its terms, reflect an agreement to pay the culinary employees Davis–Bacon wages. Tr. at 3–4. By contrast, in the present case, the Board held that the Davis–Bacon Act was applicable. Moreover, the terms of the contract here clearly incorporate the regulation at 29 C.F.R. § 5.2(*l*), thus indicating an agreement to comply with the regulation.

**7.** This rule of contract interpretation is analogous to the precept of statutory construction that where one statute incorporates another statute by reference, the statute incorporates the referenced provisions as they exist at the time the incorporating statute is enacted. Subsequent amendments to the referenced statute are not incorporated unless the legislature has shown its intent to the contrary. 2B Sutherland Statutory Construction § 51.08 at 192 (5th Ed. 1992).

bility of the statute and regulations to particular workers and factual scenarios. Nor is the plaintiff bound to accept, without recourse, all rulings and interpretations issued by the Administrator of the Wage and Hour Division.[8] Rather, the plaintiff waived its right to contest, as it attempts to do here, the validity of the statute and regulations in and of themselves, because the plaintiff agreed to their incorporation into the contract.

Associated also argues that holding plaintiff to the terms of its contract constitutes a violation of equal protection and due process. Associated contends that employers should not be able to waive their right to contest employees' entitlement to prevailing wages. First, as discussed above, the plaintiff is not prevented from disputing the applicability of the Davis–Bacon Act to a given factual situation. Moreover, the plaintiff could have disputed the regulations or the application of the Davis–Bacon Act prior to the contract award. *See Universities Research Association, Inc. v. Coutu,* 450 U.S. 754, 782–84, 101 S.Ct. 1451, 1467–68, 67 L.Ed.2d 662 (1981). Further, the Davis–Bacon Act was enacted to protect employees, not employers. The Supreme Court has stated that:

> [T]he Davis Bacon Act 'was not enacted to benefit contractors, but rather to protect their employees from substandard earnings by fixing a floor under wages on Government projects.' ... That objective is clearly not 'frustrated' when contractual arrangements between employers and their employees result in higher compensation and benefits than the floor established by the Act.

*Walsh v. Schlecht,* 429 U.S. 401, 411, 97 S.Ct. 679, 686, 50 L.Ed.2d 641 (1977) (citation omitted).

Finally, plaintiff suggests that defendants are precluded from raising their contractual defense because defendants failed to raise the issue before the Board. Yet longstanding Supreme Court precedent permits defendants to offer alternative theo-

ries of defense which were not raised administratively. *See Helvering v. Gowran,* 302 U.S. 238, 245, 58 S.Ct. 154, 158, 82 L.Ed. 224 (1937) (noting that "if the decision below is correct, it must be affirmed, although the lower court relied upon a wrong ground or gave a wrong reason"); *Security and Exchange Comm'n v. Chenery,* 318 U.S. 80, 88, 63 S.Ct. 454, 459, 87 L.Ed. 626 (1943) (finding that this rule reflects the reality that it is "wasteful to send a case back to a lower court to reinstate a decision which it had already made but which the appellate court concluded should properly be based on another ground").

Thus the Court holds that the plaintiff cannot now contest the validity of the regulation defining the "site of the work", when the plaintiff consented to its inclusion into its contract. Since the plaintiff does not contest the Board's application of the regulation to these facts, the Court must affirm the decision of the Board and conclude that Red Rock employees fall within coverage of the Davis–Bacon Act under the provisions of the implementing regulations.

C. Even If, *Arguendo,* the Plaintiff Were Not Contractually Prevented from Contesting the Validity of the Regulation, the Regulation Is Not Inconsistent With the Statute and Would Be Upheld as a Permissible Interpretation of the Statute

Even if the plaintiff had not contractually agreed to the application of 29 C.F.R. § 5.2(*l*)(2), the Court would uphold the regulation, because it finds that plaintiff construes the scope of the *Midway* decision too broadly. In *Midway,* the Court of Appeals addressed the question of "whether material delivery truckdrivers, who are employees of the contractor, but who work off-site most of the time and come on-site only to drop off a delivery, are 'mechanics and laborers employed directly upon the site of the work.'" 932 F.2d at 989. In making this determination the Court of Appeals was confronted with the validity of a

---

8. In fact, the contract provides for the resolution of disputes regarding labor standards by stating that they shall be resolved in accordance with the procedures set forth in 29 C.F.R. Parts 5, 6, and 7. Pl. Opp., App. A, Contract ¶ 1.7.8 at I–52–53.

different regulation than the one at issue in the instant case, namely 29 C.F.R. § 5.2(j). Section 5.2(j) provides that the work covered under the Davis–Bacon Act includes "the transporting of materials and supplies to or from the building or work of the employees of the construction contractor or construction subcontractor". The Court held that this regulation, "insofar as it includes off-site material delivery truckdrivers in the Act's coverage, is invalid." *Id.* at 992. It was undisputed in *Midway* that the truckdrivers at issue spent very little time at the site of the work. *Id.* at 989, n. 5.

By contrast, in the present case the dispute centers on whether the batch plant and gravel pit constitute part of the "site of the work" for purposes of the Act, such that employees who work at those locations are employed "directly on the site of the work". In other words, the *Midway* decision stands for the proposition that the Davis–Bacon Act does not cover "off-site" workers. The instant case involves the distinct (but related) question of what constitutes the "site of the work"—which workers are off-site and which workers are on-site.

The Court of Appeals found that "what little legislative history can be found on the subject supports the interpretation that Congress intended the Act to apply only to on-site workers, and affirmatively intended it not to apply to off-site workers". *Id.* at 991. Yet the defendants do not dispute this contention. Rather, they contend that the Red Rock employees *were* on-site workers.

(1) *The Statute Does Not Define the Precise Geographical Boundaries Described by the Term "Site of the Work," and the Midway Decision Does Not Clarify This Issue*

The plaintiff contends that the *Midway* decision stands for the proposition that the phrase "site of the work" as used in the Davis–Bacon Act is unambiguous in all respects. A careful reading of *Midway*, however, belies this contention. The Court of Appeals held that the phrase "site of the work" unambiguously connotes *a* geo-graphic limitation. *Midway* at 990 (emphasis added). However, the Court of Appeals did not clarify the extent of the geographic limitation described by the phrase. For example, the Court stated that:

We find no ambiguity in the text: "site of the work" clearly connotes to us a geographic limitation. Thus, the ordinary meaning of the statutory language is that the Act applies only to employees working directly on the physical site of the public building or public work under construction. And indeed, the Secretary's regulations define "the site of the work" as "limited to the physical place where the construction ... will remain," 29 C.F.R. § 5.2(*l*)(1), along with off-site facilities that are "dedicated exclusively" to the performance of the contract, and are "so located in proximity to the actual construction location that it would seem reasonable to include them." 29 C.F.R. § 5.2(*l*)(2).

*Id.* at 990 (footnote omitted).

Thus in one breath the Court of Appeals first suggests that the "site of the work" does not extend beyond the physical boundary of the place where the construction will remain, and then cites, with no disapproval, the very regulation at issue herein, which provides that when functional and geographic criteria are satisfied, the site of the work extends *beyond* the physical boundary of the place that the construction will remain. Through this inconclusive juxtaposition, the Court of Appeals recognizes, but does not resolve, the confusion.

The Court of Appeals also found that "[n]othing in the legislative history suggests ... that Congress intended the employment status of the worker, *rather than* the location of his job, to be determinative of the Act's coverage." *Id.* at 991 (emphasis added). However, while this statement again makes clear that the phrase "site of the work" requires some geographical limitation, the Court of Appeals does not state that the "site of the work" must be defined solely with reference to geography, and does not reach the issue of whether the regulation employing *both* a functional and a geographical defini-

tion of "site of the work" is permissible. As previously discussed, *supra* at 971, section 5.2(*l*)(2) offers a definition of "site of the work" which includes both functional *and* geographical elements. Therefore the regulation does not make the employment status of the worker, rather than the location of the job, determinative of coverage, and thereby conflict with the *Midway* decision. In fact, the *Midway* court explicitly refused to decide the validity of the regulation at 29 C.F.R. § 5.2(*l*)(2). *Midway*, 932 F.2d at 989, n. 6; 991, n. 12.

Thus, the plaintiff has incorrectly concluded that the *Midway* court held that the phrase "site of the work" is unambiguous in all respects. A careful reading of the decision and the statute reveals that the exact geographical limits of the term "site of the work" are undefined. By leaving undisturbed the regulation set forth in Section 5.2(*l*), the Court of Appeals implicitly recognized that there is ambiguity in the phrase "site of the work" that Section 5.2(*l*) attempts to address.

### (2) The Agency's Regulation Constitutes a Reasonable Interpretation of the Phrase "Site of the Work"

█ Having determined that the statute is unclear regarding the precise geographical location defined by the term "site of the work", the Court must proceed to the second step of the *Chevron* analysis to determine whether the Secretary's interpretation of the phrase, as embodied in the regulation, is permissible.

As previously explained, if a statute is silent or ambiguous with respect to a specific issue, the agency has the power to make policy choices that " 'represent . . . a reasonable accommodation of conflicting policies that were committed to the agency's care by the statute.' " *Chevron*, 467 U.S. at 844–45, 104 S.Ct. at 2783 (citations omitted). The Court must accept the agency's interpretation of the statute if it is "reasonable and consistent with the statutory purpose." *Ohio v. Dep't of the Interior*, 880 F.2d 432, 441 (D.C.Cir.1989) (citation omitted).

As the Court of Appeals has explained, the Davis–Bacon Act was enacted "to pro-tect local contractors from being underbid on federally-funded construction projects by government contractors who based their bids on imported labor who would work for cheaper wages than those prevailing in the area". *Midway*, 932 F.2d at 986 (citations omitted). The Davis–Bacon Act is a remedial statute, designed not "to benefit contractors, but rather to protect their employees from substandard earnings". *United States v. Binghamton Construction Co.*, 347 U.S. 171, 176–77, 74 S.Ct. 438, 441, 98 L.Ed. 594 (1954). Consistent with this statutory purpose, the regulation defining "site of the work" "specifically prevents a government contractor from creating an artificial, independent off-site gravel pit and batch plant, and thus avoid the payment of Davis–Bacon wage rates to workers at that site." Def.Mot. for Summary Judgment at 14. This interpretation of the statute is reasonable, consistent with its legislative purpose, and, given the deference due an agency's interpretation of a statute, must be upheld. *See Chevron*, 467 U.S. at 844–45, 104 S.Ct. at 2783.

### D. The Secretary's Claim for Back Wages Is Not Barred by the Two-Year Statute of Limitations Specified in the Portal-to-Portal Act

█ The plaintiff also contends that the defendant is prevented from withholding the funds at issue in this case because the administrative proceedings were commenced outside of the two-year statute of limitations set forth in the Portal-to-Portal Act. *See* 29 U.S.C. § 255. This argument is without merit. The Portal-to-Portal Act's two-year statute of limitations does not apply to administrative proceedings for withholding under the Davis–Bacon Act, because these proceedings are not considered actions for purposes of the Portal-to-Portal Act. *See, e.g., Glenn Electric Co. v. Donovan*, 755 F.2d 1028, 1033 n. 7 (3d Cir.1985); *Unexcelled Chem. Corp. v. United States*, 345 U.S. 59, 66, 73 S.Ct. 580, 584, 97 L.Ed. 821 (1953).

### III. Conclusion

Accordingly, for all of the reasons previously stated, the Court affirms the Wage

Appeals Board decision that the Red Rock employees were entitled to prevailing wages in accordance with the Davis–Bacon Act. The back wages were properly withheld in accordance with the statute. Therefore, the defendant's Motion for Summary Judgment must be granted, and that the plaintiff's Motion for Summary Judgment must be denied.