Joseph W. O'MALLEY, III, Appellant,

v.

CHEVY CHASE BANK, F.S.B.,
et al., Appellees.

No. 97–CV–1189.

District of Columbia Court of Appeals.

Argued May 19, 1998.

Decided Feb. 8, 2001.

Joseph W. O'Malley, pro se.

Christopher C. Fogleman, Rockville, MD, for appellee.

Before TERRY, SCHWELB, and RUIZ, Associate Judges.

RUIZ, Associate Judge:

Joseph O'Malley, the *pro se* mortgagor debtor, appeals the grant of summary judgment for appellees, Chevy Chase Bank, F.S.B., whose loan was secured by the mortgage ("bank" or "Chevy Chase Bank"), and David N. Prensky, the trustee under the deed of trust (the "trustee"). O'Malley also appeals the trial court's order denying his motion for reconsideration. We reverse the grant of summary judgment and remand for further proceedings.

O'Malley filed a complaint against the bank, the trustee, and the successful bidders at a foreclosure sale,[1] seeking to invalidate the January 3, 1996, and March 12, 1996, foreclosure sales of his real property by the trustee. He also sought an accounting, the entry of an order allowing him to reinstate the bank loan secured by the property, and other relief. He alleges that at the first sale the trustee impermissibly denied him the right to cure his default and reinstate the loan. He alleges also that the bank's notice of the second foreclosure sale was defective because it failed to note his right to cure or the cure amount and that he was not allowed to bid at the March 12, 1996, foreclosure sale.[2]

This appeal raises a number of issues, including two of first impression. We summarize our reasoning: First, we hold that the statutory prescription of a right to

---

1. The other defendants, Rosey Godas and William Duggan, were dismissed from the suit because O'Malley failed to file an affidavit of service.

2. Although not at issue in this appeal, on March 28, 1996, Associates Financial Services of America (AFSA) filed a "motion to intervene of right, petition for claim to surplus proceeds, and request for declaratory relief." The motion averred that O'Malley executed a junior Deed of Trust and Note in AFSA's favor in the principal amount of $75,000.64. The trial court granted the motion allowing AFSA to intervene, and directed that the trustee pay to AFSA any surplus proceeds in the amount of $82,182.00, plus interest at the rate of $29.10 per day, and reasonable attorneys' fees and costs. AFSA has not participated in this appeal.

cure a default to "not more than one time in any two consecutive calendar years," D.C.Code § 45–715.1(b) (1996 Repl.), does not limit O'Malley's contractual right to cure a default, as provided in the deed of trust between O'Malley, the bank, and the trustee. Thus, as the deed of trust contains no limitation on the number of times a debtor may cure his default, O'Malley had a right to notice of the first foreclosure sale and to cure his default pursuant to the terms of the deed. Because there are disputed issues of fact concerning whether O'Malley was permitted to cure prior to the first foreclosure sale, and whether O'Malley had indicated to the bank that he was unable to effect a timely cure, we remand to the trial court for proceedings to resolve those factual issues which affect a determination of the validity of the first sale. In view of our remand with respect to the first sale, we do not reach the question whether a mortgagor's equity of redemption is transferred to the purchaser upon a successful bid at a foreclosure sale, thereby stripping the original owner-debtor of that property interest.

## I.

On February 22, 1984, O'Malley and his wife executed a Deed of Trust for the O'Malleys' single family residence located at 2943 McKinley Street, N.W., with American Security Bank, N.A., as trustee, and B.F. Saul Mortgage Company, the lender, securing a promissory note of that same date, by which O'Malley promised to repay the lender the principal amount of $110,000 and a variable interest.[3] Under the terms of the promissory note, if the borrower did not pay the amount payable when due, the entire outstanding principal amount, accrued but unpaid interest and other indebtedness became due and payable. The purchase money deed of trust

executed for the benefit of the lender, subsequently substituted by appellee Chevy Chase Bank, irrevocably granted and conveyed the property to the trustee with power of sale.

Since 1988, O'Malley has defaulted on the loan payments on eleven different occasions. The trustee scheduled foreclosure sales for the property on each occasion. Until the foreclosure sale scheduled for June 20, 1995, O'Malley cured his default on each occasion as allowed under the deed, and reinstated his loan, terminating the foreclosure proceedings. Before the tenth scheduled foreclosure sale on June 20, 1995, O'Malley filed a bankruptcy petition which stayed the sale.

The eleventh scheduled trustee's sale, and the first that is the subject of this litigation, was scheduled for January 3, 1996, at 1:00 p.m. ("first sale"). According to appellees, photocopies of the Notice of Foreclosure Sale were sent both to O'Malley and to his wife by certified mail, return receipt requested, on November 13, 1995, to their home and business addresses. The Notice of Foreclosure stated that the default could be cured by payment of $11,212.76.

O'Malley did not cure his loan default before the first sale, and the trustee's foreclosure sale went forward as scheduled. O'Malley attended the sale with a friend, Jessie Willingham, who was the highest bidder, but failed to complete the sale within thirty days from the date of sale, thereby defaulting under the terms of the sale.

Willingham's default under the terms of the January 3, 1996, sale resulted in the trustee scheduling another sale for March 12, 1996 (the "second sale"), which also is challenged in this appeal. The trustee recorded the Notice of Foreclosure Sale of

---

**3.** O'Malley and his wife were subsequently divorced, and by deed dated December 10, 1991, Robyne O'Malley conveyed to her husband her interest in the real property. By agreement to substitute and appoint trustee, dated January 28, 1992, appellee David N.

Prensky, Esq., was substituted and appointed as substitute trustee in place of American Security Bank. The promissory note and the deed of trust were subsequently transferred to appellee Chevy Chase Bank, a subsidiary of B.F. Saul Mortgage Co.

Real Property or Condominium Unit for the second sale with the District of Columbia Recorder of Deeds on February 9, 1996. The Notice did not indicate the minimum balance required to cure the default, but indicated that this provision was "not applicable." The day before the second sale, March 11, 1996, O'Malley spoke to the trustee by telephone and asked about the amount of the required deposit for the sale and whether reinstatement was possible. The trustee informed the debtor that reinstatement was not possible at that time.

O'Malley was present at the March 12, 1996, sale. In order to qualify as a bidder, each potential bidder was required to have in his or her possession a minimum of $10,000 in the form of cash, certified check or cashier's check. A question arose as to whether O'Malley had the required sum to qualify as a bidder. He showed the auctioneer and the trustee a $6000 cashier's check, a $2000 third-party uncertified personal check and some cash. According to the trustee, when he asked O'Malley how much he had in cash, O'Malley either responded that he had $2000 or refused to respond directly to the question, directing the trustee or the auctioneer to count the cash. In his deposition and affidavit, O'Malley says that he had a sufficient deposit, including a certified check in the amount of $6000, a personal check in the amount of $2000, and $4000 in cash. O'Malley further states that he asked the trustee and auctioneer to verify his representation and "count" the cash.

The sale was adjourned until a later time in order to allow O'Malley and another potential bidder to certify the personal checks. O'Malley left the auctioneer's office and walked to a NationsBank branch located about two or three blocks away. The bank teller informed him that the check could not be certified because it was postdated for the following day. While O'Malley was still at the bank attempting to certify the third-party personal check, the sale was called at 1:18 p.m. and concluded

at 1:21 p.m. after the McKinley Street Partnership, which bid $190,000 and tendered the necessary $10,000 deposit, was declared the highest bidder. O'Malley returned to the auctioneer's office at 1:25 p.m. but he did not go inside; instead he went home. On April 17, 1996, O'Malley filed his complaint in the Superior Court.

On December 4, 1996, the bank filed a motion for summary judgment. After considering O'Malley's motion in opposition and the arguments presented by all parties at a hearing on the motion, the trial court entered an order on April 4, 1997, granting summary judgment in favor of the bank and the trustee. The trial court ruled that after a bidder at a foreclosure sale defaults and fails to close the sale, equitable title in the property reverts back to the debtor-in-possession. According to the trial court, after Willingham defaulted, equitable title reverted to O'Malley. The trial judge also concluded, however, that notwithstanding O'Malley's equitable interest, D.C.Code § 45–715.1 applied to this case and limited O'Malley's right to cure to one time every two calendar years, so that O'Malley did not have the right to cure his default before the second sale.

## II. Standard of Review: Summary Judgment

O'Malley makes a number of arguments on appeal, all to the effect that the trial court erred in granting summary judgment in favor of appellees. "When reviewing a trial court order granting summary judgment, this court makes an independent review of the record. Our standard of review is the same as the trial court's standard for initially considering the parties' motions for summary judgment." *Holland v. Hannan,* 456 A.2d 807, 814 (D.C.1983) (citations omitted). We affirm the entry of summary judgment if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Super. Ct. Civ. R. 56(c) (2000). In considering this appeal, we are confronted

with both questions of law and the issue of whether there are material facts in dispute.

## III. Application of D.C.Code § 45–715.1

O'Malley contends that the trial court erred in determining that D.C.Code § 45–715.1 limits a defaulting debtor's right to cure to one time every two calendar years.[4] As a result of that ruling, the trial court determined that O'Malley's right to cure was unavailable until two years from January 12, 1995, the last time that he had cured a default. Because O'Malley did not have any right to cure in 1996, the trial court reasoned that, as a matter of law, O'Malley could not have prevented auction of his property by curing his default at either the first or second sale. Therefore, according to the trial court, a notice that advised to the contrary would have been in error and a notice of cure amount would have been a nullity.

O'Malley argues that a borrower has both contractual rights pursuant to the terms of the deed of trust[5] and a statutory right under section 45–715.1 to cure the default and reinstate the loan. He contends that the statutory limit of one cure every two years does not apply in his case because the deed of trust does not impose a limit on the number of times he may cure and reinstate the loan. The bank and the trustee contend that the trial court correctly determined that section 45–715.1(b) restricts a debtor's right to cure to not more than once in any two consecutive calendar years, and as such, O'Malley did not have a right to cure the default before either the first or second sale.

Section 45–715.1 of the District of Columbia Code, titled "Right to cure residential mortgage foreclosure default," provides in relevant part that

after a notice of intention to foreclose a residential mortgage has been given pursuant to § 45–715, at any time up to 5 business days prior to the commencement of bidding at a trustee sale or other judicial sale on a residential mortgage obligation, the residential mortgage debtor or anyone in his behalf, not more than 1 time in any 2 consecutive calendar years, may cure his default and prevent sale or other disposition of the real estate, by tendering the amount or performance specified in subsection (c) of this section.

D.C.Code § 45–715.1(b). To cure a default under this section, a debtor must; 1) pay in the form of cash, cashier's check, or certified check all sums required to bring the account current, except amounts due by operation of any acceleration clause; 2) perform any other obligation due in the absence of default or an acceleration clause; and 3) pay costs and expenses incurred by the mortgagee associated with foreclosure. *See* D.C.Code § 45–715.1(c). Once the residential mortgage debtor has cured a default as provided in the statute, that debtor is "restore[d] ... to the same position as if the default or the acceleration had not occurred." D.C.Code § 45–715.1(d).

The issue before us is the applicability to this transaction of the statutory limit on the right to cure to "not more than 1 time in any 2 consecutive calendar years." D.C.Code § 45–715.1(b). Our review of the statutory scheme and the legis-

---

4. The trial court reasoned that:

A debtor in default of a residential mortgage obligation can stop a foreclosure sale of his property by curing his default, but, his right to prevent the sale by curing is limited to one time every two calendar years. The plain meaning of the statute is that if the debtor has prevented a foreclosure after the trustee has scheduled and advertised a sale, by tendering the cure amount, that remedy is unavailable to the debtor who again finds himself in default and facing a loss of his property through a trustee sale within a two year period of the cure.

5. We discuss paragraph 19 of the deed of trust between O'Malley and Chevy Chase Bank, *infra*.

lative history indicates that this section establishes a minimum requirement for contracts that do not otherwise provide a right to cure a residential mortgage foreclosure, but does not impose a ceiling on the number of times that a debtor may cure his or her default pursuant to the terms of the contract between the parties.[6]

■ Where the meaning of the statute is discernible from its plain language, that plain meaning will be given effect. *See West End Tenants Ass'n v. George Washington Univ.*, 640 A.2d 718, 726 (D.C.1994) ("It is clear that 'the starting point for interpreting a statute is the language of the statute itself,' and that, '[a]bsent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive,'" (quoting *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980))). "This court will not give effect to a plain language interpretation which is 'plainly at variance with the policy of the legislation as a whole.'" *In re G.G., Jr.*, 667 A.2d 1331, 1334 (D.C.1995) (quoting *West End Tenants Ass'n*, 640 A.2d at 726 n. 14.). *See also United States v. American Trucking Ass'ns*, 310 U.S. 534, 543, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940).

First, we note that, in contrast to the statutory provision concerning notice of a foreclosure sale, which clearly overrides contractual provisions,[7] the statutory language before us is silent on its effect on contractual terms as between parties to the deed of trust. *Cf.* D.C.Code § 45–715(a) (providing with respect to "any person interested in such a sale" for application to the court to fix the terms of sale and notice, "[i]f the length of notice and terms of sale are not prescribed by the mortgage or deed of trust, or be not left therein to the judgment or discretion of the mortgagee or trustee").

■ In a case where the statute is the sole source of the right to cure, its plain meaning dictates that the residential mortgagor has only one opportunity to cure every two calendar years, assuming receipt of the statutorily required prior notice. See *supra* note 7. We hold here that where the contract between the parties provides a more generous right to cure than the statute, the contractual terms govern and section 45–715.1 is inapplicable to limit the

---

6. As a threshold issue, we note that the execution of the deed of trust on O'Malley's property on February 22, 1984, preceded enactment of the statute on May 8, 1984, but O'Malley's attempted cures in 1996 postdated the statute. The statute does not expressly identify the mortgages to which it applies, and whether its effectiveness could be determined by reference to the date of execution of the underlying mortgage documents or the date when the right to cure is asserted. In general, contracts are construed to incorporate the law existing at the time of execution. *See Ball, Ball & Brosamer, Inc. v. Martin*, 800 F.Supp. 967, 972 (D.D.C.1992); *see also Peterson v. District of Columbia Lottery & Charitable Games Control Bd.*, 673 A.2d 664 (D.C.1996) ("Courts may not construe an agreement to be modified by subsequent changes in the law unless there is a clear expression in the contract that this is the intention of the parties." (quoting *Ball*, 800 F.Supp. at 972)). In light of our interpretation that the statute provides a minimum requirement for mortgage contracts, we assume, without deciding, that the statute applies to O'Malley's mortgage.

7. Section 45–715 of the District of Columbia Code provides that

[n]o foreclosure sale under a power of sale provision contained in any deed of trust, mortgage, or other security instrument, may take place unless the holder of the note secured by such deed of trust, mortgage, or security instrument, or its agent, gives written notice, by certified mail return receipt requested, of said sale to the owner of the real property encumbered ... at least 30 days in advance of the date of said sale. Said notice shall be in such format and contain such information as the Council of the District of Columbia shall by regulation prescribe.

D.C.Code § 45–715(b). *See Independence Fed. Sav. Bank v. Huntley*, 573 A.2d 787, 788 (D.C.), *cert. denied*, 498 U.S. 853, 111 S.Ct. 148, 112 L.Ed.2d 114 (1990) (terms of statute must be strictly complied with as "key purpose of § 45–715(b) is to insure ... that the owner of the encumbered property has notice of the sale 'at least 30 days in advance'").

mortgage debtor's right to cure. This reading of the statute is consistent with other parts of the law which expressly give superior rights to the debtor than provided by the contract, *see* D.C.Code § 45–715(b), *supra* note 7, and comports with "the court's strict construction of foreclosure statutes in favor of homeowners." *Bank–Fund Staff Fed. Credit Union v. Cuellar,* 639 A.2d 561, 570 (D.C.1994).

Because the statutory language is silent on the issue, we look to legislative intent and legislative history. In *Cuellar,* we noted that the District's statutory foreclosure notice procedures, *see* D.C.Code § 45–715(b), were enacted for two primary reasons: 1) to ensure that homeowners would have sufficient time before a sale to take legal action to protect themselves, and 2) to provide the District government with an opportunity to investigate the foreclosure and inform the homeowner of the sale and of any abuses. *See Cuellar,* 639 A.2d at 572. The District of Columbia Council passed D.C. Law 5–82, the "Right to Cure a Residential Mortgage Foreclosure Default Act of 1984" ("the Act"), now codified at D.C.Code § 45–715.1, with the purpose of providing a reasonable vehicle to help homeowners avoid foreclosure by giving all residential homeowners—regardless of contract—the opportunity to cure at least once in two years. *See Cuellar,* 639 A.2d at 576 ("[T]he cure statute [D.C.Code § 45–715.1] was designed to prevent lenders from putting borrowers in the position of having to make payment of the note in full or forfeit their homes. . . ."). It would be contrary to this legislative purpose to protect defaulting homeowners from losing their primary residences if we were to construe the statute in a way that would preempt contracts that give homeowners greater rights.

The legislative history of the Act supports our interpretation of the legislative intent. The legislative record shows that the purpose and intent of the Council in enacting this statute was "to provide mortgagors of single family residential real property, including condominiums and co-operative units, with a statutory right to cure a default in mortgage obligations." COMMITTEE ON HOUSING AND ECONOMIC DEVELOPMENT, COUNCIL OF THE DISTRICT OF COLUMBIA, COMMITTEE REPORT ON BILL 5–187, THE "RIGHT TO CURE A RESIDENTIAL MORTGAGE FORECLOSURE DEFAULT ACT OF 1984," at 1 (1984) ("Committee Report"). The Committee Report reflects at various points that the Council intended to create a statutory right to cure in the case where the borrowers' contracts did not so provide, not to preclude the homeowner-debtor from having more opportunities to cure under the relevant instruments:

> The statistics quoted above are evidence that some form of statutory foreclosure relief is necessary. While Deed of Trust Notes normally outline the rights of parties in the event of a default by the mortgagor, these documents *are sometimes silent on the question of whether a mortgagor has the right to cure such a default.* In addition, many of the standard form Deed of Trust Notes contain language automatically accelerating all outstanding payments immediately upon default of the mortgagor. The combined effect of these facts is to put mortgagors at a disadvantage once a default has occurred.

Committee Report at 2 (emphasis added). Furthermore, the Committee Report notes that:

> None of [the existing] sections provides the debtor-mortgagor with a statutory right to prevent foreclosure sale by paying sufficient sums to put the mortgagee in the same position that the mortgagee would have been in had the mortgagor met all of his or her obligations under the Deed of Trust Note. Such a "right to cure" is sometimes granted by contract. In addition[,] federal regulations governing certain mortgage lenders contain provisions granting a right to cure. Bill 5–187, not only brings the District's statutory law into conformity with existing Federal regulation, but also establishes

*uniform minimum standards* for the contractual relationship between mortgagors and mortgagees of single family, owner-occupied residential realty.

*Id.* ("Bill 5–187: Impact on Existing Law") (emphasis added).

■ As the legislative history makes clear, section 45–715.1 was not intended to preempt contractual clauses allowing a debtor to cure more than once every two years. Therefore, the trial court was incorrect in ruling that the statute limited O'Malley's right to cure under the Deed of Trust.

■ Thus, we turn to consider the terms of the Deed of Trust executed by the parties in this case, which provides as follows:

19. Borrower's right to reinstate. Notwithstanding Lender's acceleration of the sums secured by this Deed of Trust, Borrower shall have the right to have any proceedings begun by Lender to enforce this Deed of Trust discontinued at any time prior to the earlier to occur of (i) the fifth day before sale of the Property pursuant to the power of sale contained in this Deed of Trust or (ii) entry of a judgment enforcing this Deed of Trust if: (a) Borrower pays Lender all sums which would be then due under this Deed of Trust, the Note and notes securing Future Advances, if any, had no acceleration occurred.... Upon such payment and cure by Borrower, this Deed of Trust and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

Purchase Money Deed of Trust at ¶ 19. The language in the contract does not limit the number of times a borrower may seek reinstatement, nor does it expressly incorporate any statutory limitations.[8] *Cf.* Pur-

chase Money Deed of Trust ¶ 18 ("If Lender invokes the power of sale, Lender shall send written notice in the manner prescribed by applicable law."). Where contractual language is ambiguous, it is construed against the drafter, particularly in pre-printed agreements. *See, e.g., Vaulx v. Cumis Ins. Soc'y, Inc.*, 407 A.2d 262, 265 (D.C.1979). Moreover, we note that paragraph 19 of the Deed of Trust expressly sets the time at which the debtor may exercise the right to cure, "prior to *the earlier to occur of* (i) the fifth day before sale of the Property pursuant to the power of sale contained in this Deed of Trust or (ii) entry of a judgment enforcing this Deed of Trust." (Emphasis added). The statute fixes the time to exercise the right to cure as "any time up to 5 business days prior to the commencement of bidding at a trustee sale or other judicial sale on a residential mortgage obligation."[9] These differences in the treatment of different but related aspects of the right to cure evidence an intent not to limit the number of times the mortgagor could cure. Therefore, we hold that the Deed of Trust did not limit the number of times that O'Malley could cure upon default, and that he had that right at the time of the first sale in January of 1996, notwithstanding that he had previously cured a default within two calendar years of that date.

## IV. Validity of First Sale

O'Malley argues that both the January 3, 1996, sale and the March 12, 1996, sale are invalid for a number of reasons. Although he conceded at oral argument that he received proper notice of the first sale, O'Malley contends that the bank and the trustee improperly refused to give him the opportunity to cure his default and reinstate the loan. He assigns as error the trial court's failure to rule on the disputed

8. See *supra* note 6. At the time the mortgage was executed, there was no statutory limitation on the number of times a mortgagor could cure.

9. We note this aspect of the contractual language merely as a way of interpreting the parties' contractual intent. As noted *supra,* by establishing minimum requirements, the statute preempts the lender's attempt to restrict the right to cure default.

fact whether or not appellees offered him the opportunity to reinstate his loan prior to the January 3,1996, foreclosure sale. Appellees argue that O'Malley "never expressly raised the issue in his complaint[,]" and therefore "any factual dispute regarding these issues would be immaterial to a resolution of the issues presented by this appeal."

The record reflects that O'Malley raised the validity of the first sale in his memorandum of points and authorities in opposition to the defendants' motion for summary judgment. Specifically, he alleged that Chevy Chase Bank "refused to allow reinstatement on the first sale. This was a violation of the terms of Chevy Chase's own deed of trust which allows reinstatement and District of Columbia law." Furthermore, in his statement of material facts in dispute, O'Malley listed "whether or not defendants denied ... reinstatement to Plaintiff prior to the January 3, 1996 foreclosure sale." In their reply to plaintiff's opposition to defendants' motion for summary judgment, appellees conceded that:

> a factual dispute exists regarding whether Chevy Chase Bank, F.S.B. "denied reinstatement figures and reinstatement" to plaintiffs [sic] prior to the January 3, 1996 foreclosure sale, [however,] this fact is immaterial to the issues raised in plaintiff's Complaint, since the Complaint makes no reference to the January 3, 1996 foreclosure sale, and focuses exclusively on the March 12, 1996 foreclosure sale.

The trial court did not address this issue in its order, presumably because, under its reasoning that section 45–715.1(b) precluded O'Malley from curing a default more than once every two years, the bank was not obligated to provide O'Malley with an opportunity to cure his default. As we hold otherwise, we review the record to determine whether there is sufficient evidence to place in genuine dispute the material fact of appellees' denial of O'Malley's contractual right to cure. *See Holland,*

456 A.2d 807, 814 (D.C.1983) (noting that when this court reviews a trial court's order granting summary judgment, we make an independent review of the record and we review the trial judge's conclusion *de novo*).

In determining whether there is an issue of material fact, this court must view the record in the light most favorable to the nonmoving party. *See Burch v. Amsterdam Corp.,* 366 A.2d 1079, 1081 & n. 1 (D.C.1976). "Even a doubt as to whether a genuine issue [of fact] exists is sufficient to preclude summary judgment." *Bason v. Am. Univ.,* 414 A.2d 522, 525 (D.C.1980). Appellees argue that whether O'Malley was given an opportunity to reinstate his loan before the January sale is immaterial because O'Malley did not "expressly" raise this issue in his complaint. We view the complaint as having raised the issue. Although articulated in a tenuous manner, construing the complaint in the light most favorable to the pleader, O'Malley raised the issue of the validity of the first sale in his complaint. *Cf. Vicki Bagley Realty, Inc. v. Laufer,* 482 A.2d 359, 364 (D.C.1984) (noting that in reviewing the dismissal of a complaint, this court "construe[s] the complaint in the light most favorable to the plaintiff and assume[s], for the purpose of the motion, that the allegations in the complaint are true"); *Johnson–El v. District of Columbia,* 579 A.2d 163, 166 (D.C.1990) ("[A]ny ambiguities or doubts concerning the sufficiency of the claim must be resolved in favor of the pleader." (quoting *Doe v. United States Dep't of Justice,* 243 U.S.App. D.C. 354, 364, 753 F.2d 1092, 1102 (1985))). In paragraph ten of his complaint, O'Malley pled that "On a previous occasion [to the March 12, 1996 sale] Plaintiff had requested his right to cure in a timely manner and Mr. Prensky refused to grant same." Therefore, we conclude that O'Malley raised the invalidity of the first sale in his complaint, making it a material issue in this case. *See Cuellar,* 639 A.2d at 576 (invalidating a foreclosure

sale where a foreclosure notice was deficient because it failed to state the cure amount). Moreover, as this case was disposed of at summary judgment, O'Malley's failure to refer to the invalidity of the January 2, 1996, foreclosure sale in the complaint would not be fatal to his claim if the pleadings and other submissions in the record before the trial court suffice to support it. Here, O'Malley squarely raised the issue in his opposition to the motion for summary judgment, and the bank recognized in its reply to that opposition that, if relevant, the factual issue is disputed. If the bank improperly refused to allow O'Malley to cure prior to the first sale, the sale is invalid. *See* Purchase Money Deed of Trust ¶ 19; D.C.Code § 45–715(b). In that eventuality, O'Malley's equitable rights in the property would have persisted, along with his contractual right to cure. See *infra* Part V. Therefore, even if O'Malley's complaint did not challenge the first sale *per se,* its validity would nonetheless be a material issue with respect to O'Malley's rights at the time of the second sale, which is clearly challenged in the complaint.

█ As the movants for summary judgment, appellees have the burden to show that there was no genuine dispute of fact with respect to O'Malley's claim that they did not allow him to exercise his right to cure. *See* Super Ct. Civ. R. 56(c) (noting that a motion for summary judgment is proper when the movant shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law"); *see also Musa v. Continental Ins. Co.,* 644 A.2d 999, 1001–02 (D.C.1994) ("The moving party's 'initial responsibility' consists of informing the [trial] court of the basis for its motion, and identifying those portions of the pleadings, ... together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.)" (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986))). On appeal, the bank and the trustee argue that O'Malley was not entitled to reinstatement because he failed to offer to cure within five days before the scheduled sale as required by the contract and by section 45–715.1. Moreover, they contend, O'Malley conceded in writing on the day prior to the first sale that he lacked the financial ability to cure the default.

The record contains affidavits from David Prensky, the trustee, and O'Malley, showing that there is a genuine dispute of material fact concerning this issue.[10] In his affidavit, the trustee stated: "That prior to the January 3, 1996 foreclosure sale, Mr. O'Malley had been afforded the opportunity to cure his default, but failed to do so prior to the sale."[11] In his affidavit, O'Malley averred that "although [O'Malley] requested reinstatement figures and reinstatement and was in a position to reinstate prior to the January 3, 1996 foreclosure sale from the Defendant, Mr. Prensky refused them, saying 'the Bank will not do that at this time.'" Thus, at the time the question was before the trial court, there was a material fact in dispute. Subsequently, the bank and the trustee appended to their brief on appeal a letter from O'Malley to Prensky dated the day before the first sale in which O'Malley acknowledged that he did not have suffi-

---

**10.** In its order, the trial court noted that although both statements were characterized as affidavits and included attestations to penalties for perjury, there was no indication that the statements were made under oath. Accordingly, the trial court treated the documents as unsworn statements containing assertions of material facts.

**11.** This statement is found on page two of Prensky's affidavit, which was erroneously not included in the record, but was attached as appendix H to appellant's brief. As the record on appeal was missing a number of pages which had been designated by the parties, we consider the attachments to the parties' briefs as supplements to the record where the record indicates the documents were presented to the trial court for its review, and neither party contests their inclusion.

cient funds to cure (the cure amount had been set at $11,212.76), but offered $7500.00 in return for a three-week postponement of the sale, which the bank rejected. Although this letter could be dispositive of the issue, it was not presented before the trial court, as conceded at oral argument by appellees' counsel, and is not properly considered part of the record on appeal. Further, O'Malley did not have an opportunity before the trial court to explain the circumstances of the letter or present argument concerning its effect on his right to cure.

We have held that failure to timely give the cure amount in a required notice of foreclosure sale, is not overcome by a showing that the mortgagor was financially unable to cure the default before the foreclosure sale. As we remarked in *Bank–Fund Staff Federal Credit Union v. Cuellar*, 639 A.2d 561 (D.C.1994), if the mortgagors did not receive proper notice, "whether they had the funds to cure [by the foreclosure sale] is not the issue." *Id.* at 575. This is because the main purpose of the notice requirement is to allow a defaulting mortgagor to cure the default. Here, it appears that O'Malley offered two-thirds of the cure amount and requested a short postponement of the foreclosure sale. If so, it is possible that, given proper notice, the mortgagor would have "been able to raise the needed funds," and there is a question whether, if the mortgagee bank had been aware that the mortgagor had a right to reinstate, its position "regarding the conditions under which it would agree to a further postponement of the foreclosure sale would have remained the same." *Id.*

Accordingly, because the validity of the first sale depends on a disputed issue of material fact, namely, whether O'Malley was allowed to cure his default, we reverse the grant of summary judgment and remand for the trial court's factual determination of this issue. If the trial court were to determine that the bank did not permit O'Malley to cure, it should then address whether O'Malley indicated that he did not have the financial funds to cure and, if so, whether such inability would affect the validity of the first sale notwithstanding the bank's incorrect assumption that O'Malley did not have a right to cure. If the trial court determines that there is a question about the validity of the first sale, the case should proceed to trial on that issue. If the first sale was invalid, the contract for purchase at that sale also was not valid and O'Malley's rights remain as at *status quo ante.* *See* D.C.Code § 4–715.1(b) (providing that a residential mortgagor "may cure his default and *prevent sale* or other disposition of the real estate, by tendering the amount or performance specified" (emphasis added)).

*Reversed and remanded.*